**CITY OF PHILADELPHIA**

v.

**AMERICAN COASTAL INDUSTRIES, INC.**

**Civ. A. No. 87–6525.**

United States District Court, E.D. Pennsylvania.

Dec. 14, 1988.

Thomas J. Wamser, Chief Asst. City Sol., Philadelphia, Pa., for plaintiff.

Mary Ellen O'Laughlin, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

LOWELL A. REED, Jr., District Judge.

This diversity action[1] arises out of a dispute over a public contract which was awarded by the City of Philadelphia (City) to the defendant American Coastal Indus-tries, Inc. (ACI). The City brought this action alleging that ACI breached the contract after it failed to furnish certain performance bonds. Defendant filed a counterclaim against the City asserting that plaintiff could have accepted a letter of credit in lieu of the performance bonds and that the City therefore breached its contract with ACI.

Presently before the court are the cross motions of the parties for summary judgment. Because the material facts of the case are uncontested,[2] the case may properly be disposed of on the motions. Fed.R. Civ.P. 56(c). *See Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). For the reasons which follow, the motion of the plaintiff will be granted and the motion of the defendant will be denied.

I

*Factual Background*

Defendant ACI responded to plaintiff City's invitation to bid on a contract for "Conversion of Two South Broad Cars to Flat Cars for the Broad Street Subway," submitting a bid for $230,500.00. Defendant was the low bidder on the contract and, as required by the City's invitation to bid, ACI submitted a surety check of $12,275.00 along with its bid. Approximately one month later, the City accepted ACI's bid for the conversion of the cars and awarded the contract to it. Under the terms of the invitation to bid, ACI was required to furnish performance and payment bonds for the full amount of the bid simultaneously with execution and delivery of the contract for conversion of the cars. Part A–3 of the Specifications attached to the "Invitation to Bid" provide, in pertinent part:

1. Because the court's jurisdiction is predicated on diversity, I am bound to apply the substantive law of the forum state of Pennsylvania. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

2. Both parties have stipulated to the facts of the case and have filed them with the court. Although the defendant does claim in its latest filing that there is indeed a genuine issue of material fact as to whether a letter of credit is a valid substitute for a performance bond, I reject its characterization of the issue as a question of fact and find that under the terms of the agreement, the City was, as a matter of law, under no obligation to accept anything other than the required performance bonds. *See infra* note 7.

1. *Performance Bonds.* Simultaneously with the execution and delivery of this Contract, the Contractor *shall* furnish properly executed performance bonds written by a qualified surety or sureties in form acceptable to Purchaser in the amount of one hundred percent (100%) of the contract price to secure the Contractor's faithful performance of all the terms and conditions of the Contract.

2. *Payment Bonds (Labor and Material Bonds)* Simultaneously with the execution and delivery of this Contract, the Contractor *shall* also furnish properly executed payment bonds, written by a qualified surety or sureties in form acceptable to Purchaser, in the amount of one hundred percent (100%) of the contract price, to secure the payment of all subcontractors and suppliers to the Contractor on this Contract.

(Emphasis added). Despite ACI's efforts to secure the bonds, ACI was unable to obtain the requisite bonds from its surety, The Travelers Indemnity Company.[3] Section 11 of the standard "Conditions of Bidding" states, in pertinent part:

11. Execution of Contract. Any bidder not lawfully released from his bid, who *refuses* to execute a contract in accordance with his bid or who *refuses* to furnish the required bonds, and insurance, shall be liable to the City in the amount of the check deposited as security for his bid as liquidated damages; or where the damages are readily ascertainable, such bidder shall be liable for the actual loss or damage sustained by the City by the failure of such bidder to enter into the contract.

(Emphasis added). In lieu of the performance bonds, ACI offered to substitute a letter of credit payable to the City in the full amount of the contract. The City rejected this offer, declared ACI in default of its bid and seized ACI's surety check of $12,275.00. After the City declared ACI in default it awarded the contract for conversion of the cars to Delaware Car Corporation, the next lowest and only other bidder, for a contract price of $296,210.00. The City calculated its "readily ascertainable" damages at $65,710.00, the difference between ACI's bid and that of the next lowest and only bidder, Delaware Car Corporation. Having already seized the $12,275.00 surety check from ACI, the City demanded the difference between that surety check and the $65,710.00 for a total of $53,135.00.[4]

II

*Discussion*

This case involves an arms length commercial transaction between a municipal corporation and a commercial entity. Neither party was a stranger to the bidding process and there is no evidence that either party exercised unequal bargaining power. As a result, I will analyze the facts of the case as a straightforward action for breach of contract.

ACI admits that Part A–3 of the Specifications attached to the Invitation to Bid required it to furnish performance bonds and payment bonds simultaneously with execution and delivery of the contract for conversion of the cars and admits that it did not supply the required performance bonds. Nevertheless, defendant offers several reasons why the court should not grant the City's motion for summary judgment.

First, ACI asserts that although it did not furnish the requisite bonds, it nevertheless did not breach the contract because a breach would only have occurred

---

**3.** ACI contends that it had contacted The Travelers Indemnity Company prior to submitting its bid and believed that Travelers would issue the performance bond for this contract if in fact it was awarded to ACI. After it was awarded the contract, ACI asserts that Travelers informed the defendant that it would not issue a performance bond for the contract. Travelers denied ACI the bonds because of its "excessive outstanding financial commitments" which prevented it from obtaining a performance bond

before completing these contracts. ACI contends that it attempted to obtain the bonds from other sources but was unable to do so.

**4.** Although the City calculated the difference between the surety check and the Delaware Car Corporation's bid to be $53,135.00, this must have been an a computational error. The actual difference is $53,435.00.

had it "refused" to furnish the bonds. As support for its argument, ACI points to the language of Paragraph 11 of the Conditions of Bidding which refers to a bidder who "refuses to furnish the required bonds." ACI contends that it never "refused" to supply the City with the performance bonds because it made a good faith effort to secure the bonds from its surety. Defendant argues that because the section utilizes the word "refusal" rather than "failure," it should not be liable to the City since it diligently attempted, but failed, to secure the performance bond and therefore never intentionally refused to provide such a bond. "Refuse," defendant argues, requires some intent or will whereas "fail may result from inability despite the best of intentions." Therefore, ACI asserts it could not be found to have violated Paragraph 11 of the Conditions of Bidding because its failure to supply the bonds was "an act of inevitable necessity." [5] ACI insists that there is a fundamental distinction between a "refusal" and a "failure" to act because "refuse" involves an act of will whereas "fail" may simply involve the "inability" to act or may be an act of "inevitable necessity." Thus, ACI urges the court to decide whether an *inability* to post a performance bond is tantamount to a *refusal* to post such a bond. The court need not reach that issue, however, because I find that under the general terms of the contract as delineated in Part A–3 of the Specifications attached to the Invitation to Bid, ACI was under an affirmative obligation to furnish the properly executed performance bonds. Therefore, setting aside how I would interpret the word "refuse" in Paragraph 11, I find that ACI breached the agreement it had with the City because it did not provide the City with the required bonds. Simply stated, it is unnecessary to offer a judicial interpretation of the precise language of Paragraph 11, because regardless of the seman-

tics of that paragraph, the result is essentially the same.

ACI appears to be under the mistaken impression that absent an act of will on its part or a bad faith refusal to supply the bonds, it has not breached the contract. Defendant, however, misses the point. ACI breached the contract because it did not provide the performance bonds as *required* by Part A–3 of the specifications outlined in the invitation to bid. ACI's reliance on the language on Paragraph 11, and its implication that its duty to provide the bonds emanates from that paragraph is misplaced because Paragraph 11 is simply a remedial provision which articulates the *consequences* of a breach and does not constitute the bidder's *obligations* under the terms of the contract. Instead, it is Part A–3 of the Specifications attached to the Invitation to Bid which is the crux of the agreement between the parties and it is there that the respective obligations of the parties are set forth. Paragraphs 1 and 2 of those specifications provide that the contractor *"shall* furnish" the necessary performance and payment bonds. Given the explicit mandatory language of this provision in the contract, I find it could not have been clearer that ACI had an absolute obligation under the terms of the contract to furnish properly executed bonds. ACI did not supply these bonds and therefore breached its contract with the City.

■ The second issue raised by ACI in its opposition to the City's motion is that the City had "no rational basis for refusing ACI's offer of a letter of credit as reasonable alternative security." Defendant argues that because it was willing and able to furnish the City with a letter of credit in lieu of the performance bond, the City was unreasonable in its rejection of the substitute. ACI asserts that as a result of the City's rejection of its offer to provide a letter of credit, the City deprived ACI of the profits it would have realized from the

---

**5.** ACI's argument that it should not be held responsible for the fact that it did not supply the bonds because it involved a document which could only have been issued by a third party—a bonding company—is unconvincing. ACI knew at the time it bid on the project that it would have to supply the performance bonds if the City awarded it the contract, and given its outstanding financial obligations should have anticipated that it would perhaps encounter some difficulty in obtaining such bonds.

completion of the contract and that the City should therefore be held liable for the breach.

It is well established that "on judicial review, courts, absent proof of fraud, collusion, bad faith or abuse of power, do not inquire into the *wisdom* of municipal actions and *judicial* discretion should not be substituted for *administrative* discretion." *Weber v. City of Philadelphia*, 437 Pa. 179, 183, 262 A.2d 297, 299 (1970) (emphasis in original). *See also Flaherty v. Allegheny Port Authority*, 450 Pa. 509, 299 A.2d 613 (1973); *E–Z Parks, Inc. v. Philadelphia Parking Authority*, 100 Pa. Commw. 303, 514 A.2d 318 (1986). Upon review of the City's decision to reject ACI's letter of credit, I find that the City's decision was not motivated by fraud, collusion or bad faith and was in no way entered into in an arbitrary or capricious manner. On the contrary, the City demanded from ACI what it demands from every bidder—performance bonds as a surety. The fact that the City required that such bonds be supplied was clearly delineated and understood by ACI at each and every stage of the bidding process.[6]

As a result, this court need not decide whether a letter of credit is a valid substitute for a performance bond. All of the documents agreed to and signed by the parties explicitly refer to the fact that the bidder who is selected must provide the City with performance bonds. While it may be true that, under certain circumstances, a letter of credit is a commercially acceptable substitute for a performance bond,[7] I find that, under the terms of its agreement, the City was under no obligation to accept such a letter, nor was it under any obligation to "lawfully release" ACI from its bid.

The only question remaining is the extent of the damages recoverable by the City for the breach. In this regard, the defendant reiterates its argument that Paragraph 11, which specifies the measure of damages in the event of a breach, should not apply because that paragraph only applies to a bidder who "refuses" to supply the bonds. Because I find that the damages in the case would result in the same calculation under general common law contract principles as it would under the damages provision of Paragraph 11, I find it unnecessary to inject my judicial interpretation of the language of that paragraph.

It is a well established tenet of contract law that contract damages are "intended to give [the injured party] the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in

---

6. The City provides the court with some very persuasive reasons why a letter of credit would not provide it with the same sort of protection as a performance bond. For example, it argues that while a letter of credit would allow the City to demand payment of a sum equal to the amount of the letter of credit, such a letter would not provide the City with the same degree of protection as a surety. A surety, plaintiff contends, essentially takes the place of its principal and assures that the principal's duties under the parties' agreement will be fulfilled. Such duties include the obligation to arrange for completion of the work, even if that requires a greater expenditure than the initial bid price. As indicated above, even without these salient arguments, the court would be "loathe to review the details of the effectuation of actions of municipal authorities." *Flaherty v. Port Authority of Allegheny County*, 450 Pa. 509, 516, 299 A.2d 613, 617–18 (1973). However, the City has provided the court with reasons which would appear to form a rational basis for its decision not to accept ACI's letter of credit. In contrast, the defendant has provided the court with nothing other than the fact that the City did not accept a letter of credit and a bald assertion that bad faith was somehow involved. In my opinion, the record is completely devoid of any evidence indicating bad faith, and I find that the fact that the City did not accept the letter of credit in lieu of the performance bonds, without more, is insufficient to indicate that the City acted in bad faith.

7. It should be noted that this court makes no findings as to whether a letter of credit is indeed a commercially acceptable substitute for a performance bond except to note that it would appear that the question is a matter of law and not, as the defendant contends, a question of fact. *See Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 n. 10 (3d Cir. 1980). Nevertheless, even if I assume that a letter of credit is a commercially acceptable substitute for a performance bond there is no question that the agreement between the parties specified in very precise terms ACI's obligation to supply such bonds if its bid was accepted.

had the contract been performed." Restatement (Second) of Contracts § 347 comment a (1981). *See Maxwell v. Schaefer,* 381 Pa. 13, 21, 112 A.2d 69, 73 (1955); *Bellefonte Area School District v. Lipner,* 81 Pa.Commw. 334, 339, 473 A.2d 741, 744 (1984). In this case, placing the City in "the same economic position [it] would have [been in] if the contract had been performed,"[8] would entitle the City to recover an amount equal to the difference between ACI's bid on the project and the next lowest bid which the City accepted as a result of the defendant's breach. ACI's bid was $230,500.00. The next lowest bid, submitted by the Delaware Car Corporation, was $296,210.00, a difference of $65,710.00. The difference between ACI's bid and that of Delaware Car Corporation minus the initial bid surety check of $12,275.00, is $53,435.00. Accordingly, I will enter judgment in favor of the plaintiff City of Philadelphia and order the defendant to pay $53,435.00 plus interest from the date of the breach,[9] November 12, 1986, and costs.

An appropriate order follows.

### ORDER

AND NOW, this 14th day of December, 1988, upon consideration of the cross motions for summary judgment, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED and DECREED that the motion of the plaintiff City of Philadelphia is GRANTED, the motion of the defendant American Coastal Industries, Inc. is DENIED, and defendant's counterclaim against plaintiff is DISMISSED with prejudice. Judgment is entered for plaintiff City of Philadelphia and against defendant American Coastal Industries, Inc. in the amount of $53,435.00, plus interest at the legal rate of 6% from the

---

**8.** J. Calamari & J. Perillo, The Law of Contracts § 14–4 at 591 (3d ed. 1987).

**9.** *See Palmgreen v. Palmer's Garage, Inc.,* 383 Pa. 105, 108, 117 A.2d 721, 722 (1955) (award of prejudgment interest is a legal right to which plaintiff is entitled); *Bozzo, Inc. v. Electric Weld Division,* 345 Pa.Super. 423, 429–30, 498 A.2d 895, 898 (1985) (same); *Anderson v. Automobile*

date of the breach, November 12, 1986, and costs.

*Fund,* 258 Pa.Super. 1, 13–14, 391 A.2d 642, 648 (1978) (interest allowable from date of breach despite bona fide dispute as to amount of indebtedness). *See also Trustees of Univ. of Pa. v. Lexington Ins. Co.,* 815 F.2d 890, 908 (3d Cir. 1987) (reviewing Pennsylvania law as it relates to prejudgment interest).