Bellefonte Area School District, Appellant *v.* Leo H. Lipner, Appellee.

Argued January 30, 1984, before Judges WILLIAMS, JR., BARRY and PALLADINO, sitting as a panel of three.

*John R. Miller, Jr., Miller, Kistler & Campbell, Inc.,* for appellant.

*Virginia B. Eisenstein, Eisenstein & Bower,* for appellee.

OPINION BY JUDGE PALLADINO, April 5, 1984:

Bellefonte Area School District (Appellant) appeals from a decision of the Court of Common Pleas of Centre County which held that the Appellant breached its employment contract with Leo H. Lipner (Appellee) by wrongfully terminating him. Appellant was ordered to pay $87,777.15 in compensatory damages to the Appellee. For the reasons that follow we affirm the decision below and modify as to damages.

In August of 1964, Appellee, then a school teacher in New York City, was offered a position with the Appellant as a full-time school teacher, which he accepted. Appellee was then fifty-four (54) years of age.

At the time Appellee accepted Appellant's offer the following school board policy (old policy) was in effect:

[W]hen a teacher in the Bellefonte Area Joint School District reaches the age which entitles him or her to Social Security benefits, they [sic] shall be automatically retired. Provided, however, that such employees so retired may be re-employed on a year to year basis until they reach the mandatory retirement age. If a teacher desires to be rehired on a year to year basis, review of his or her teaching will be done by the administrative staff to establish their [sic] qualifications to continue teaching.[1]

On July 22, 1968, another policy (new policy) was adopted by the school board which provided:

[A]ll professional employees of the Bellefonte Area School District who have elected to integrate their Public School Employees Re-

---

[1] Reproduced Record, p. 75a.

tirement benefits under the Federal Social Security Act shall be retired upon reaching the age of 65 years or the age at which they become eligible for full Social Security benefits under the Federal Social Security Act, whichever occurs earliest.[2]

Appellee, who would become sixty-five on December 7, 1974, wrote a letter November 12, 1974, to the Superintendent and President of the school board expressing his wish to continue teaching for "at least the next 2 or 3 years".[3] Appellee was terminated at the end of the 1974-75 school year.

Appellant claims the trial court, contrary to the precepts of the Parol Evidence Rule,[4] improperly admitted certain parol evidence. The evidence in question consists of two separate conversations concerning the mandatory retirement age which took place between the Appellee and Kenneth W. Miller, Supervising Principal; and between the Appellee and William Rumberger, President of the School Board.[5] Both parties acknowledged that the written contract between the Appellee and the School District incorpo-

---

[2] *Id.* at p. 73a.

[3] *Id.* at p. 69a.

[4] The Pennsylvania Superior Court aptly stated the Parol Evidence rule in *Glanski v. Ervine*, 269 Pa. Superior Ct. 182, 187, 409 A.2d 425, 428 (1979) :

Where the alleged prior or contemporaneous oral representations or agreements concern a subject which is specifically dealt with in the written contract, and the written contract covers or purports to cover the entire agreement of the parties, the law is now clearly and well settled that in the absence of fraud, accident, or mistake the alleged oral representations or agreements are merged in or superseded by the subsequent written contract, and parol evidence to vary, modify, or supersede the written contract is inadmissible in evidence.

[5] Reproduced Record, p. 36a and p. 39a, respectively.

rated the old policy in effect at the time. The admission of conversations restating that policy in no way altered the contract.[6]

Given that the old policy provided for automatic retirement at age sixty-five with a mandatory retirement age of seventy, and a year by year review of the teacher's qualifications in the interim, how were the Appellee's contractual rights affected, if at all, by the new policy? The new policy called for a mandatory retirement age of sixty-five or earlier without any possibility of full-time employment after the teacher reaches this age. The court below found the Appellant's decision to include the Appellee within the purview of the new policy and retire him at sixty-five to be a breach of the original contract.

While the opinion does not expressly state that the Appellant's actions were violative of Article I, §17 of the Constitution of the Commonwealth of Pennsylvania,[7] it does make reference to the section and declares that a statement of policy cannot be *ex post facto* so as to vary the terms of an earlier contract to the detriment of any of the parties thereto. We agree that the Appellant's actions were an attempt to vary the terms of the original contract and constituted an impairment of the Appellee's rights. However, mere impairment of contractual rights, by itself, is not enough to sustain compensatory relief. While nominal damages may be awarded for simple breach, the rights impaired must have vested for compensatory relief to lie. *McKenna v. State Employees Retirement Board*, 54 Pa. Commonwealth Ct. 338, 345, 421 A.2d 1236, 1239 (1980).

---

[6] *Glanski*, 269 Pa. Superior Ct. at 187, 409 A.2d at 428.

[7] Art. 1, §17 provides:

No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed.

On the issue of when contractual retirement rights vest, the Courts of the Commonwealth have considered this issue solely in a retirement benefits context, *i.e.,* at what time do retirement benefits vest. The law seems clear that retirement benefits vest when the employee becomes eligible to take them and that the rights remain inchoate in nature until that time. *Mc-Kenna,* 54 Pa. Commonwealth Ct. at 345, 421 A.2d at 1239; *Retirement Board of Allegheny County v. McGovern,* 316 Pa. 161, 169, 174 A. 400 (1934). By way of analogy, we believe that the right to receive the administrative review and continue teaching could not vest by the mere passage of time until the Appellee was eligible to request his continued employment. This could not have occurred, at the earliest, until November of 1974 when the Appellee formally requested to continue teaching beyond the age of sixty-five. This date is well past the effective date of the new policy and we therefore conclude that Appellee's rights did not vest by the mere passage of time.

This is not to say that the Appellee's contractual rights did not vest at all. Quite to the contrary, there is evidence contained in the record which indicates reliance by the Appellee on the old policy which caused his rights to vest. Detrimental reliance has long been recognized as a basis for compensatory relief. Moreover, the court below specifically found that the statements made by Mr. Miller explaining the school board's policy regarding retirement age, ''[were] the inducement without which the plaintiff would never have altered his position and went into the employ of the defendant''.[8] The change in the Appellee's position (his leaving the New York public school system to work for the Appellant) clearly demonstrates re-

---

[8] Reproduced Record, p. 102a.

liance on the old policy; this reliance worked to his detriment.

Since we find that the Appellant's actions impaired the Appellee's vested rights and his employment was wrongfully terminated, we turn now to the calculation of damages. Appellant was ordered to pay $87,777.15 in the nature of back pay and retirement benefits by virtue of its breach of contract. Appellant acknowledged the Appellee's qualifications as a teacher after the Appellee reached sixty-five, by employing him as a substitute teacher subsequent to his termination. When an employee is wrongfully terminated he is entitled to the compensation of which he was deprived less any amount he was able to mitigate.[9] In this case, payment for services which the Appellee was not permitted to render, less his earnings through substitute teaching, is an appropriate method to calculate his damages.

Finally, Appellant claims that it is entitled to a set-off for unemployment compensation received by the Appellee from 1975 through 1980. We agree. When there has been a breach of contract, damages are awarded in order to place the aggrieved party in the same economic position he would have been in had the contract been performed.[10] The theory behind this philosophy is based on an attempt to make the non-breaching party whole again, not to provide him with a windfall.[11] Therefore on the basis of the record the Appellant is entitled to a set-off of $5,101.00 which represents the unemployment compensation received by the Appellee from 1975 through 1980.

---

[9] J. Calamari & J. Perillo, Contracts 544 (2d ed. 1977).

[10] *Id.* at 521.

[11] *Shearer v. Commonwealth of Pennsylvania, Secretary of Education,* 57 Pa. Commonwealth Ct. 266, 424 A.2d 633 (1981).

340

ORDER

AND Now, April 5, 1984, the decision of the Court of Common Pleas of Centre County, dated April 4, 1983 is affirmed with the following modification as to damages: Appellant is entitled to a set-off in the amount of $5,101.00, the amount of unemployment compensation which the Appellee received from 1975 through 1980.