Diana GIOVAGNOLI, Petitioner,

v.

CIVIL SERVICE COMMISSION (MONROE COUNTY CHILDREN AND YOUTH SERVICES), Respondent.

Diana Giovagnoli, Petitioner,

v.

Civil Service Commission (Monroe County Children and Youth Services), Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 2, 2002.

Decided May 1, 2003.

Andrew H. Ralston, Jr., Stroudsburg, for petitioner.

Sean M. Hart, Allentown, for respondent.

BEFORE: McGINLEY, Judge, LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Diana Giovagnoli (Petitioner) petitions for review of two orders of the Pennsylvania State Civil Service Commission (Commission) awarding her back pay, and denying her request for attorney fees, based upon the termination of her employment by the Monroe County Children and Youth Services (CYS). We affirm the Commission's order awarding Petitioner back wages, and we quash the appeal of the Commission's order denying Petitioner's request for attorney fees.

Petitioner was employed by CYS as a Caseworker II from 1990 until her termination on July 18, 1997.[1] Petitioner appealed her termination to the Commission, seeking reinstatement and back pay for the time she was unemployed due to her termination. The Commission found that CYS had failed to meet its burden of establishing just cause for Petitioner's removal. However, the Commission did not award Petitioner back pay for her period of unemployment.[2] Petitioner then peti-

---

1. On June 25, 1997, Petitioner had been suspended from her position pending a formal investigation.

2. Section 952(b), (c) of the Civil Service Act of August 5, 1941 (Civil Service Act), P.L. 752, *added by* Act of June 26, 1989, P.L. 47, *as*

*amended,* 71 P.S. § 741.952(b), (c) states, in pertinent part:

   (b) Where such a decision is in favor of the employe or the aggrieved person, the commission shall make such order as it

tioned this Court for review of the Commission's order.[3]

On November 9, 2000, in the appeal lodged at No. 2462 C.D.1999, this Court issued an order and opinion in which we determined that the Commission had erred in failing to grant Petitioner back pay for her period of unemployment. As a result, we reversed the Commission's order and remanded the case to the Commission for the computation of back pay to be awarded.

After remand, on June 29, 2001, the Commission issued an order directing CYS to reimburse Petitioner for "[s]uch wages and emoluments as would have been earned by [Petitioner] from June 25, 1997,[4] through November 11, 1999,[5] less wages earned and benefits received under the Public Laws of Pennsylvania ..." A hearing was conducted before the Commission

on November 1, 2001, as the parties could not agree as to the back pay due to Petitioner.[6] The dispute related to the amount owed Petitioner for: (1) lost salary; (2) lost overtime and on-call/call-out pay; (3) lost vacation leave; (4) lost personal leave; (5) lost sick leave; (6) lost medical benefits; (7) lost life insurance; and (8) lost pension benefits.

On April 3, 2002, the Commission issued an opinion and order fixing the amount due Petitioner as back pay. With respect to Petitioner's lost salary, the Commission found that she would have earned $58,243.41 had she been employed by CYS for the relevant period. The Commission also found that she had received $61,457.00 during this period from unemployment compensation benefits and earnings from her subsequent employment. As her subsequent earnings exceeded her lost wages

---

deems appropriate to assure such rights as are accorded the individual under this act.
(c) In the case of any employe removed ... the commission may modify or set aside the action of the appointing authority. Where appropriate, the commission may order reinstatement, with the payment of so much of the salary or wages lost, including employe benefits, as the commission may in its discretion award.

See also Section 951(d) of the Civil Service Act which states, in pertinent part, that "[t]he commission may ... in its discretion, hold public hearings, record its findings and conclusions, and make such orders as it deems appropriate to assure observance of the provisions of this act ..." 71 P.S. § 741.951(d).

3. During the pendency of that appeal, CYS offered Petitioner a reinstatement to her former employment. However, on November 11, 1999, Petitioner declined CYS's reinstatement offer.

4. June 25, 1997 is the date on which Petitioner was suspended from her position pending a formal investigation.

5. November 11, 1999 is the date on which Petitioner declined CYS's offer of reinstatement.

6. Prior to the taking of testimony, counsel for Petitioner indicated that she had intended to present the testimony of CYS's pension plan administrator at the hearing, but there had been difficulties in serving a subpoena to secure this testimony. See Notes of Testimony 11/1/01 (N.T. 11/1/01) at 10–11. As a result, counsel for Petitioner stated, "[W]e are going to be requesting at the conclusion of today's hearing that there be a continuance granted with [CYS] providing us with the proper name and address of the plan administrator so that we can subpoena that person to be here to testify on the pension plan that is in dispute today." Id. at 11. At the conclusion of the hearing, the Commission Chairman stated, "[T]hen we can close the record, subject, of course, to the comments I made. [Counsel], if you feel it's necessary to reopen the record, you may file a motion to do so, but for purposes of this proceeding today, we are closing the record." Id. at 202. However, the certified record shows that counsel for Petitioner did not request that the record be reopened to present the testimony of this witness.

by $3,213.59, the Commission determined that Petitioner was owed no compensation for back salary. The Commission also determined that the excess amount should be offset against any compensation to which she was entitled.

With respect to Petitioner's lost overtime pay, the Commission found that she had earned $539.10 in overtime in 1996, and that CYS would have offered her the same amount of overtime during the relevant period. As a result, the Commission determined that she would have earned $614.58 in 1998 and $653.75 in 1999, or a total of $1,278.33 in overtime pay during the relevant period.[7]

With respect to Petitioner's lost on-call/call-out pay, the Commission found that participation in this type of duty was voluntary. Based on her past level of participation in this type of duty, the Commission found that she did not demonstrate with any reasonable certainty that she would have worked this duty during the relevant period. As a result, the Commission found that back pay was not due for this type of duty.

With respect to Petitioner's lost vacation leave, the Commission found that she would have earned or carried over a total of 468.75 hours of annual leave. Based upon an hourly rate of $13.23/hour, the Commission found that she was entitled to a total of $6,201.57 in lost vacation leave.

With respect to Petitioner's lost personal leave, the Commission found that she would have earned 45 hours of personal leave. Based upon an hourly rate of $13.23/hour, the Commission found that she was entitled to a total of $595.35 in lost personal leave.

With respect to Petitioner's lost sick leave, the Commission found that, pursuant to the provisions of the controlling collective bargaining agreement in effect, unused sick leave had no cash-out value upon separation from employment. As a result, the Commission found that she was not entitled to additional compensation for lost sick leave.

With respect to Petitioner's lost medical insurance benefits, the Commission found that she incurred $843.45 out-of-pocket expenses to purchase 5 months of medical insurance through COBRA. The Commission also found that she did not incur any additional uncovered medical expenses.[8] As a result, the Commission found that Petitioner was entitled to $843.45 in lost medical benefits.

With respect to Petitioner's lost life insurance benefits, the Commission found that she did not incur any out-of-pocket expenses for this coverage during her separation from employment. As a result, the Commission found that she was not entitled to additional compensation for lost life insurance benefits.

Finally, with respect to Petitioner's lost pension benefits, the Commission found that under the pension plan in effect at the time, Petitioner received all of her accumulated contributions and interest as she had not vested at the time of her separation from employment.[9] As a result, she with-

7. The Commission also noted that although Petitioner initially disputed the amount of overtime due at the hearing, she did not offer any evidence to challenge the amount offered by CYS at the hearing.

8. The Commission determined that, pursuant to *Arcurio v. Greater Johnstown School District*, 157 Pa.Cmwlth. 525, 630 A.2d 529 (1993), out-of-pocket expenses are the proper measure of damages for an employee who has lost medical insurance coverage during a period of separation from employment.

9. The Commission noted that if Petitioner had accepted CYS's reinstatement offer, she would have had the option to repay the withdrawn amount and to restore the credit for

drew the accumulated contributions and interest which totaled $11,734.79, and it was rolled over into an individual retirement account (IRA).[10]

The Commission noted that Petitioner was seeking: (1) the additional contributions of 5% of her salary that she would have made to the pension plan; (2) the contributions that CYS would have made to the plan; (3) the accumulated contributions and interest that she withdrew and rolled over into the IRA; (4) the interest that would have accrued on her contributions; (5) the 10% penalty that she incurred for withdrawing the funds from the IRA; and (6) the tax that she paid on these withdrawn funds.

With respect to the additional contributions that Petitioner would have made to the plan, the Commission found that they would have been deducted from her gross wages during her employment. As she had been awarded all of these gross wages, without deduction for these contributions, the Commission concluded that she would receive as back pay the same amount of money that would have been contributed by her to the pension plan.

With respect to the contributions that CYS would have made to the pension plan, the Commission determined that there would have been no employer contribu-

tions prior to Petitioner's retirement. As a result, the Commission determined that there was no compensation due.

With respect to the withdrawn IRA funds, and the resultant penalty and taxes paid by Petitioner, the Commission found that she had failed to demonstrate that this withdrawal was a natural and ordinary consequence of the termination of her employment. As a result, the Commission determined that there was no compensation due on these items.

Based on the foregoing, the Commission concluded that $8,918.70 was owed Petitioner based on the following: (1) $1,278.33 for lost overtime; (2) $6,201.57 for lost vacation leave; (3) $595.35 for lost personal leave; and (4) $843.45 for compensable medical expenses. The Commission then deducted $3,213.59 in offset earnings, thereby resulting in $5,705.11 in total net back pay owed Petitioner. Accordingly, the Commission issued an order directing CYS to pay her $5,705.11 in back pay. On May 3, 2002, Petitioner filed the instant petition for review from the Commission's order.

On May 2, 2002, Petitioner had submitted to the Commission a petition for attorney fees and costs associated with her appeal.[11] Specifically, Petitioner alleged,

---

her prior county service. *See* Commission Opinion at 17. *See also* Section 26 of the County Pension Law, Act of August 31, 1971, P.L. 398, *as amended*, 16 P.S. § 11676 ("[A]ny contributor separated from county employment by dismissal, resignation, or any other reason, except retirement, or any county officer having legally withdrawn from the retirement system, who returns to county employment and restores to the fund to the credit of the members' annuity reserve account his accumulated deductions as they were at the time of separation, shall have the annuity rights forfeited by him restored. Payments may be made either in a lump sum or by installments; but, in no event shall the installments be less than sufficient to pay such

amount by the time the member attains superannuation retirement age.").

10. The Commission also found that, within 30 to 60 days after opening the IRA, Petitioner withdrew all of the funds thereby incurring a 10% penalty for early withdrawal and paying tax upon the withdrawn funds.

11. At the hearing before the Commission relating to the amount of back pay due Petitioner, the Commission advised her that she would be required to submit a separate petition for attorney fees and costs. *See* N.T. 11/1/01 at 203–204.

*inter alia,* that she incurred attorney fees and costs totaling $20,143.90 relating to her appeal.

On June 19, 2002, the Commission issued an opinion and order disposing of Petitioner's petition. The Commission stated that its authority to award attorney fees and costs is exclusively provided in what is commonly referred to as the Costs Act,[12] and that an adjudication relating to the termination of employment is specifically excluded from those proceedings in which attorney fees and costs may be awarded.[13] Accordingly, the Commission issued an order denying Petitioner's request for attorney fees and costs. On July 15, 2002, Petitioner filed the instant petition for review from the Commission's order.[14][15]

In these appeals, Petitioner claims that the Commission erred in: (1) determining the amount of back pay due; (2) denying her request for a continuance to secure the testimony of CYS's pension plan administrator at the hearing before the Commission; and (3) denying her request for the award of attorney fees and costs.

**I.**

Petitioner first claims that the Commission erred in determining the amount of back pay due. Specifically, Petitioner contends that the Commission erred in its calculation of: (1) lost pension benefits; (2) lost medical and life insurance benefits; (3) lost sick leave; (4) lost salary; and (5) denying the award interest on the foregoing items.

**12.** Act of December 13, 1982, P.L. 1127, *as amended,* 71 P.S. §§ 2031–2035.

**13.** Specifically, Section 3(a) of the Costs Act states:

(a) Except as otherwise provided or prohibited by law, a Commonwealth agency that initiates an adversary adjudication shall award to a prevailing party, other than the Commonwealth, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer finds that the position of the agency, as a party to the proceeding, was substantially justified or that special circumstances made an award unjust.

71 P.S. § 2033(a). In turn, in defining the term "adversary adjudication", Section 2 of the Costs Act states that "[t]he term does not include an adjudication ... [r]esolving disputes concerning the dismissal, suspension, or discipline of any employee of this Commonwealth ..." 71 P.S. § 2032. In addition, Section 2 defines "Commonwealth agency" as "[a]ny executive of independent agency as defined by section 102, of the act of October 15, 1980 (P.L. 950, No. 164), known as the "Commonwealth Attorneys Act" ..." *Id.*

**14.** The appeal relating to the Commission's order awarding back pay is lodged at No. 1110 C.D.2002. The appeal relating to the

Commission's order denying Petitioner's request for attorney fees is lodged at No. 1677 C.D.2002. By a *per curiam* order dated August 29, 2002, this Court *sua sponte* consolidated the appeals.

**15.** By a *per curiam* order dated November 6, 2002, this Court *sua sponte* quashed the appeal lodged at No. 1677 C.D.2002. On November 18, 2002, Petitioner filed an application for reargument in that appeal. By a *per curiam* order dated November 26, 2002, this Court vacated the order of November 6th quashing the appeal, dismissed Petitioner's application for reargument as moot, and directed the parties to address at oral argument the question of whether Petitioner's petition for review should be treated as a petition for leave to appeal under the Costs Act. On January 9, 2003, this Court issued a *per curiam* order denying Petitioner's application for reargument of this Court's November 6th order. On February 3, 2003, Petitioner filed in the Supreme Court a petition for allowance of appeal from this Court's order of January 9th, which was lodged at No. 83 MAL 2003. On March 3, 2003, this Court issued a *per curiam* order which vacated the order of January 9th and which stated that the order of November 26th shall remain operative. On March 17, 2003, Petitioner withdrew the petition for allowance of ·appeal lodged at No. 83 MAL 2003.

We initially note that our scope of review of a Commission adjudication is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law has been committed or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Pennsylvania Game Commission v. State Civil Service Commission*, 561 Pa. 19, 747 A.2d 887 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Shade v. Civil Service Commission*, 749 A.2d 1054 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 564 Pa. 699, 764 A.2d 52 (2000).

The Commission is the sole fact finder in civil service cases, and it has the exclusive authority to assess witness credibility and evidentiary weight. *Bosnjak v. State Civil Service Commission*, 781 A.2d 1280 (Pa.Cmwlth.2001). Thus, this Court will not disturb the Commission's determinations regarding credibility or the weight of the evidence. *Id.* In reviewing a Commission decision, this Court views the evidence and all reasonable inferences arising therefrom in a light most favorable to the prevailing party. *Id.*

The Commission has the discretion to fashion a remedy that is appropriate for a violation of the Civil Service Act. Section 952(b), (c) of the Act, 71 P.S. § 741.952(b), (c); *Filice v. Department of Labor and Industry*, 660 A.2d 241, 243 (Pa.Cmwlth. 1995). Thus, an award of back pay or lost wages to an employee who successfully challenges a personnel action of an appointing authority is within the discretion of the Commission. *Long v. Pennsylvania Liquor Control Board*, 112 Pa.Cmwlth. 572, 535 A.2d 1233 (1988); *Kealy v. Pennsylvania Liquor Control Board*, 106 Pa. Cmwlth. 527, 527 A.2d 586 (1987).

However, this discretion is not unlimited. The salary and wages that the Commission can order to be paid as back pay are limited to salary and wages due under the Civil Service Act, and these must be proved with reasonable certainty. *Elias v. Department of Public Welfare*, 98 Pa.Cmwlth. 218, 511 A.2d 887 (1986). The Commission's decision with respect to the award of back pay or lost wages will be upheld by this Court unless the Commission abused its discretion. *Long; Kealy.* An abuse of discretion will only be found where the Commission's decision is not supported by substantial evidence. *Id.*

### A. Pension Benefits

Petitioner first claims that the Commission erred in its calculation of the pension benefits due. Specifically, Petitioner submits that, although she had not vested in the pension plan at the time of her termination, she is entitled to receive the contributions that CYS would have made to the plan. In addition, she asserts that she is entitled to receive the 5% of her salary that she would have contributed to the plan. Moreover, she contends that as she was required to withdraw and expend the rolled-over IRA funds, she is entitled to receive all of the funds, the 10% penalty she paid for early withdrawal, and the taxes she paid thereon.

We initially note that, in general, the nature of retirement provisions for public employees are not mere gratuities offered by an employer, but rather are deferred compensation for service actually rendered in the past. *Commonwealth ex rel. Zimmerman v. Officers and Employees Retirement Board*, 503 Pa. 219, 469 A.2d 141 (1983); *MacElree v. Chester County*, 667 A.2d 1188 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, 545 Pa. 666, 681 A.2d 180 (1996). Retirement benefits vest when an employee be-

comes eligible to take them, and these rights remain inchoate in nature until that time. *Catania v. State Employees' Retirement Board,* 498 Pa. 684, 450 A.2d 1342 (1982); *Bellefonte Area School District v. Lipner,* 81 Pa.Cmwlth. 334, 473 A.2d 741 (1984).

With respect to Petitioner's claim for the CYS contributions to the pension plan, the Commission stated the following, in pertinent part:

[Petitioner]'s attorney states in his brief that if [Petitioner] vested in the pension plan, "it is crystal clear that ... her employer would have made matching contributions." However, there is no support for this statement in this record. Our review of the pension documents provided by [Petitioner], leads us to concur with the observation made by [CYS's] counsel that "at vesting, the county makes no contribution"; therefore, "[t]here would have been no contributions during that period of time." It is a credit and the actual county contribution commences at retirement.[16] Since [Petitioner] declined reinstatement, she is not entitled to recovery for the alleged loss of any county contributions. To the extent [Petitioner] suggests that, but for her termination, she

probably would have left her contributions in the pension plan after vesting, eventually collecting a pension, we reject this claim as too speculative.

Commission Opinion at 16 fn.9 (citations to the record omitted).

As noted above, the Commission is the sole fact finder in civil service cases, and this Court will not disturb the Commission's determinations regarding credibility or the weight of the evidence. *Bosnjak.* In addition, the salary and wages that the Commission can award are limited to salary and wages due under the Civil Service Act, and these must be proved with reasonable certainty. *Elias.*

Thus, the Commission was free to accept as credible, and rely upon, the evidence which indicated that CYS's contribution to Petitioner's pension plan would only occur upon her retirement. Likewise, the Commission was free to conclude that Petitioner had failed to demonstrate, with any reasonable certainty, any entitlement to funds that CYS may or may not have contributed to the plan on Petitioner's behalf at the time of her retirement. In short, Petitioner has failed to demonstrate that these funds are salary and wages due under the Civil Service Act, and the Com-

---

**16.** This proposition is supported by the provisions of the County Pension Law. Specifically, Section 7(a) of the County Pension Law provides, in pertinent part:

(a) There is hereby created ... a County Employes' Retirement Fund which shall consist of all moneys arising from appropriations made by the county, from contributions made by the members of the County Employes' Retirement System and from pickup contributions and all interest earned by the investments of moneys of the fund. The moneys contributed by the county shall be credited to a county annuity reserve account; and those contributed by the members and pickup contributions shall be credited to a member's annuity reserve account. Upon the granting of a retirement allow-

ance to any contributor ... the amount of the contributor's accumulated deductions in the members' annuity reserve account shall lose their status as accumulated contributions and shall be transferred to a retired members' reserve account ...

16 P.S. § 11657(a).

In turn, Section 14(b) provides, in pertinent part, that "[o]n retirement for superannuation, a retiree shall receive a retirement allowance which shall consist of: (i) a member's annuity which shall be the actuarial equivalent of his accumulated deductions standing to his credits in the members' annuity reserve account, and (ii) a county annuity equal to one-one hundred twentieth of his final salary multiplied by each year of total service ..." 16 P.S. § 11664(b).

mission did not abuse its discretion in failing to award these speculative funds as back pay.

■ With respect to Petitioner's claim that she is entitled to receive the 5% of her salary that she would have contributed to the plan, as the Commission noted:

> [T]he calculation of the gross back salary and overtime owed to [Petitioner] for this same period of time has not been adjusted for this five percent deduction. Therefore, [Petitioner] has already been credited and will receive as back wages the same amount of money that otherwise would have been contributed by her to the pension plan. She is not entitled to a double credit for this same amount . . .

Commission Opinion at 18. As this 5% of Petitioner's salary was included in the award of back pay, the Commission did not abuse its discretion in refusing to allow a double recovery for this portion of her salary. *See, e.g., Bellefonte Area School District,* 473 A.2d at 744 ("[W]hen there has been a breach of contract, damages are awarded in order to place the aggrieved party in the same economic position he would have been in had the contract been performed. The theory behind this philosophy is based on an attempt to make the non-breaching party whole again, not to provide him with a windfall.") (footnotes omitted).[17]

■ With respect to Petitioner's claim for the withdrawn IRA funds, and the penalty and taxes, the Commission stated the following, in pertinent part:

> Instantly, [Petitioner] testified that while she originally only withdrew a small amount of her pension, she eventually withdrew "the entire thing." [Petitioner]'s testimony as to why she cashed in her IRA is because "she needed the money" to pay her mortgage and other bills. In fact, [Petitioner]'s income tax return for 1997, excluding the IRA withdrawal, was $20,969.52, $541.48 less than her base salary would have been had she been with [CYS] at year end. There is simply no other evidence of record to support [Petitioner]'s claim that she should be reimbursed for her pension, moneys she apparently spent . . . The evidence does not substantiate [Petitioner]'s position that cashing in the entire IRA was a natural and ordinary consequence of her termination nor can the Commission find any evidence that demonstrates with reasonable certainty that [Petitioner] was forced or required to cash in her IRA such that she should be reimbursed for the principal, penalty, tax paid, and the interest on the IRA.

Commission Opinion at 20–21.

Again, the Commission was free to reject Petitioner's testimony that the withdrawal of the IRA funds, and the resultant penalty and taxes, was a natural and ordinary consequence of her termination, and this determination is not subject to our review. *Bosnjak.* Thus, the Commission could properly conclude that Petitioner has failed to demonstrate that these funds are salary and wages due under the Civil Service Act. *Elias.* As a result, the Commission did not abuse its discretion in failing to include these speculative funds in its award of back pay.

---

17. As a corollary to this claim, Petitioner alleges that the Commission erred in failing to award her the tax due on this 5% of her salary. However, our review of the certified record reveals that she did not raise this claim before the Commission. As a result, this claim has not been preserved for our review. Pa.R.A.P. 1551; *Coombs v. Workmen's Compensation Appeal Board (Philadelphia Electric Co.),* 689 A.2d 996 (Pa.Cmwlth. 1997).

### B. *Medical Insurance and Life Insurance*

■ Petitioner acknowledges that the Commission relied upon this Court's opinion in *Arcurio* in determining that she was only entitled to recover her out-of-pocket expenses for her medical and life insurance benefits.[18] Petitioner contends that the majority opinion in *Arcurio* should be overruled so that an employee who is wrongfully discharged is able to recover the amount that would have been expended by an employer for this coverage. However, we will not accede to Petitioner's request.

Under *Arcurio,* Petitioner could recover her out-of-pocket expenses with respect to her insurance coverage. The Commission found that Petitioner had incurred out-of-pocket expenses totaling $843.45 to purchase 5 months of medical insurance coverage following her termination. The Commission also found that Petitioner did not incur any out-of-pocket expenses for life insurance coverage following her termination. Accordingly, the Commission properly included $843.45 in its calculation of the amount of back pay due Petitioner. In short, the Commission did not abuse its discretion in this regard.

### C. *Sick Leave*

■ Petitioner claims that the Commission erred in denying her claim for compensation for her accrued sick leave. Specifically, Petitioner contends that she is entitled to recover for the 553.25 hours in sick leave that she had accrued prior to her termination, and that she would have earned had she been employed through November 11, 1999.

With respect to Petitioner's claim for unused sick leave, the Commission stated the following, in pertinent part:

> Monroe County Director of Personnel, Francis Hite, testified that unused sick leave has no cash-out value upon separation from employment according to the provisions of the controlling collective bargaining agreement. Sick leave is "used" when an employee is paid to stay home on a regular workday. The Commission already is awarding compensation to [Petitioner] for *all* of the regular workdays she could have worked if not separated from employment even though she never actually worked for [CYS] on any of this days. Thus, ... [Petitioner] is not entitled to any additional compensation for earned sick time she might have either accumulated or used over this same period of time.

Commission Opinion at 14 (citation to the record omitted).

Again, the Commission was free to accept as credible the evidence which established that, pursuant to the relevant collective bargaining agreement, any accrued sick leave had no cash value upon her separation from employment. This determination is not subject to our review. *Bosnjak.* Thus, the Commission could properly conclude that Petitioner has failed to demonstrate that compensation for these accrued hours is salary and wages due under the Civil Service Act.[19]

---

18. *See Arcurio,* 630 A.2d at 531 ("[C]ourts have consistently rejected claims to recover the employer's cost of lost insurance benefits, holding instead that the employee is entitled only to 1) premiums paid by the employee to obtain alternative insurance coverage; and 2) medical expenses paid by the employee which would have been covered by the employer's insurance plan.") (citations omitted).

19. Moreover, as noted by the Commission, its award of back pay includes Petitioner's salary for all of the days she could have worked during the relevant period. Thus, the Commission did not abuse its discretion in refusing to allow a windfall recovery for this por-

*Elias.* In short, the Commission did not abuse its discretion in failing to include unused sick leave in its award as back pay.

## D. *Salary*

■ Petitioner claims that the Commission erred in allowing an offset for the excess wages she earned at the position she obtained following the termination of her employment with CYS. However, as this Court has previously noted:

> Although th[e] terms ["salary" and "wages"] are undefined in the [Civil Service] Act, the Commission's general powers under Section 203, 71 P.S. § 741.203,[20] are limited to enforcing the provisions of the [Civil Service] Act. In addition, it is clear from its legislatively designated title in Section 1, 71 P.S. § 741.1,[21] and the enunciated purpose in Section 2, 71 P.S. § 741.2,[22] that the [Civil Service] Act pertains only to the civil service. Thus, we believe that the salary and wages the Commission can order to be paid must be limited to salary and wages due under the [Civil Service] Act with offsets for monies earned by employment *in lieu of the civil service position.* This restrictive interpretation is consistent with [*Pennsylvania Board of Probation and Parole v. Baker,* 82 Pa.Cmwlth. 86, 474 A.2d

415 (1984)] wherein, as noted previously, we held that the Commission's authority to make an appropriate order under [the prior version of Section 952(b) of the Civil Service Act] is limited to assuring that the aggrieved party received the rights given him or her by the statute . . .

*Elias,* 511 A.2d at 893 (emphasis in original). As it is undisputed that the excess wages Petitioner earned in her subsequent employment were "monies earned by employment *in lieu of* [*her*] *civil service position*", the Commission did not err in applying an offset of this amount against the back pay owed Petitioner. *Id.*[23]

## E. *Interest*

■ Petitioner also claims that the Commission erred in failing to award interest on the amount of back pay that was wrongfully withheld by CYS. However, our review of the certified record in this case reveals that Petitioner did not raise this claim in her petition for review. As a result, this allegation of error has been waived for purposes of appeal. Pa.R.A.P. 1513(a); *Werner v. Zazyczny,* 545 Pa. 570, 681 A.2d 1331 (1996); *McKay v. Workmen's Compensation Appeal Board (Osmolinski),* 688 A.2d 259 (Pa.Cmwlth.

---

tion of her salary. *Bellefonte Area School District.*

**20.** Section 203 of the Civil Service Act provides, in pertinent part, that "[i]t shall be the duty of members of the commission as a body . . . [i]n its discretion, on petition of a citizen concerning any matter touching the enforcement and effect of the provisions of this act and to require observance of the provisions of this act . . ." 71 P.S. § 741.203(3).

**21.** Section 1 of the Civil Service Act states that "[t]his act shall be known and cited as the 'Civil Service Act'." 71 P.S. § 741.1.

**22.** Section 2 of the Civil Service Act provides, in pertinent part, that "[g]reater efficiency and economy in the administration of the government of this Commonwealth is the primary purpose of this act . . ." 71 P.S. § 741.2.

**23.** *See also Bellefonte Area School District,* 473 A.2d at 744 ("[W]hen an employee is wrongfully terminated he is entitled to the compensation of which he was deprived less any amount he was able to mitigate. In this case, payment for services which the employee was not permitted to render, less his earnings through substitute teaching, is an appropriate method to calculate his damages.") (footnote omitted).

1997).[24]

## II.

■ Petitioner next claims that the Commission erred in failing to grant a continuance so that she could present the testimony of CYS's pension plan administrator. Specifically, Petitioner contends that although the Commission was apprised of the difficulties relating to the service of a subpoena on this witness, *see* N.T. 11/1/01 at 10–11, it failed to grant her a continuance to present this witness's testimony.

However, as noted above, the transcript of the hearing before the Commission shows that Petitioner was told that she could file a motion to reopen the record for the reception of further evidence. N.T. 11/1/01 at 202. As the record demonstrates that Petitioner did not file such a motion, it cannot be said that the Commission erred in failing to reopen the record for the admission of this evidence. *See, e.g., Diamond Energy, Inc. v. Pennsylvania Public Utility Commission,* 653 A.2d 1360, 1369–1370 (Pa.Cmwlth.1995) ("[I]n addition to failing to preserve its request

for a hearing in its letter, Diamond never petitioned to reopen the proceeding for the purpose of taking additional evidence prior to the PUC's final decision. If it believed that the evidence submitted was inadequate for some reason, it could have petitioned to complete the record. Obviously, Diamond hoped that the evidence submitted would be sufficient for the PUC to find in its favor. Based on Diamond's failure to preserve its request for an oral hearing, we must conclude that there was a waiver.") (citations omitted).[25]

## III.

■ Finally, Petitioner claims that the Commission erred in denying her request for the award of attorney fees and costs under the Costs Act. Specifically, Petitioner asserts that she met all of the threshold requirements which warrant the award of such fees and costs as outlined in Section 3(a) of the Costs Act, 71 P.S. § 2033(a).

However, Petitioner overlooks Section 3(e) of the Costs Act which states:

(e) A party dissatisfied with the fee determination made under subsection

---

**24.** Moreover, even if it is assumed that this allegation of error has not been waived, it without merit. *See Elias,* 511 A.2d at 894 ("[F]inally, we must consider whether the estate is entitled to an award of interest because of what it asserts is undue delay in awarding backpay ... This period of three months [between the Commission's award of back pay and the Appointing Authority's payment] does not constitute unreasonable delay. In addition, as both counsel concede in their briefs, there are no cases on point directly interpreting what constitutes salary and wages. Therefore, we cannot say that the Appointing Authority's position in this matter has been unreasonable. Finally, we note that nothing in the Civil Service Act authorizes the Commission to award interest. Therefore, we specifically decline to authorize the award of interest in this case.").

**25.** *See also Stevenson v. State Employees' Retirement Board,* 711 A.2d 533, 538–539 (Pa. Cmwlth.1998) ("[Title] 1 Pa.Code § 35.231(a) provides in part that the petition to reopen 'shall set forth clearly the facts claimed to constitute grounds requiring reopening of the proceeding, including material changes of fact or of law alleged to have occurred since the conclusion of the hearing.' We have of course reviewed the petition and now agree with the Board that it does not allege any such material changes. Because the decision to deny a petition to reopen is one of agency discretion, *Rafferty v. State Board of Nurse Examiners,* [505 A.2d 357 (Pa.Cmwlth.1986)]; *Department of Justice v. State Civil Service Commission,* [319 A.2d 692 (Pa.Cmwlth. 1974)]; 1 Pa.Code § 35.231(c), and we do not believe that the agency abused its discretion in this matter, we reject Stevenson's assertion in this regard.").

(a) may petition for leave to appeal such fee determination to the court having jurisdiction to review final orders of a Commonwealth agency under 42 Pa.C.S. (relating to judiciary and judicial procedure). If the court denied the petition for leave to appeal, no appeal may be taken from the denial. If the court grants the petition, review of the fee determination shall be in accordance with the standards in 2 Pa.C.S. § 704 (relating to disposition of appeal).

71 P.S. § 2033(e).[26]

This Court has previously recognized that an order issued under the Costs Act is only reviewable after a petition for leave to appeal from the order has been filed and granted by this Court. *See Filice,* 660 A.2d at 243 n. 2 ("[F]ilice also argues that the Commission erred by failing to award counsel fees under [the Costs Act]. However, we have quashed Filice's attempt to appeal the Commission's denial of costs because Filice failed to file a petition for leave to appeal as required by section 3(e) of the Costs Act. This court will not convert a petition for review to a petition for leave to appeal.") (citations omitted); *Department of Environmental Resources v. Oermann,* 158 Pa.Cmwlth. 560, 632 A.2d 603, 606 (1993) ("[I]t is therefore evident that Section 3(e) [of the Costs Act] requires any party, whether an individual or nonpublic entity or a Commonwealth agency, to file a petition for leave to appeal fee determinations made under Section 3(a) [of the Costs Act] ...."). As Petitioner has neither sought nor been granted leave to appeal from the Commission's order denying the award of attorney fees, as required by Section 3(e) of the Costs Act, her appeal of that order will be quashed. *Filice; Oermann.*[27]

Accordingly, we affirm the Commission's order awarding Petitioner back pay in the amount of $5,705.11, and we quash the appeal from the Commission's order denying Petitioner's request for attorney fees.

### ORDER

AND NOW, this 1st day of May, 2003, in the appeal lodged at No. 1110 C.D.2002, the order of the State Civil Service Commission, dated April 3, 2002 at Appeal No. 20193, is AFFIRMED; the appeal lodged at No. 1677 C.D.2002 is QUASHED.

---

**26.** *See also* Section 202 of this Court's Internal Operating Procedures which states:

The president judge shall circulate petitions for permission to appeal an administrative agency's denial of an application for counsel fees and costs, arising from litigation from such agency, for disposition in the same manner as petitions for reargument under § 291, except that such petition as to costs shall be granted where four (4) votes of members of the court favor allowing the appeal. Each such petition shall indicate on its face (1) that a final decision on the merits has been made and (2) that the petitioner has presented a similar petition to the administrative agency and that the petition has been denied.

210 Pa.Code § 67.12.

**27.** *See also* Darlington, McKeon, Schuckers & Brown, 1 Pennsylvania Appellate Practice (2d ed.) § 27:119 ("[J]udicial review of such a fee determination [under the Costs Act] is limited at the discretion of the Commonwealth Court; an appeal may be taken to that court only by filing a petition for leave to appeal the fee determination. Thus, judicial review is not a matter of right, as it is for most administrative adjudications issued by state agencies ...") (footnote omitted).