**Robert E. QUINN, Petitioner,**

v.

**PENNSYLVANIA STATE CIVIL SERVICE COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 5, 1997.

Decided Nov. 25, 1997.

Robert E. Quinn, petitioner, for himself.

Earl R. Dryer, Harrisburg, for respondent.

Before PELLEGRINI and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

FLAHERTY, Judge.

Robert E. Quinn (Petitioner) petitions for review of an order from the State Civil Service Commission (Commission) dismissing his statutory appeal, pursuant to Section 951 of the Civil Service Act,[1] alleging discrimination in the scoring of his civil service examination. We affirm.

On July 20, 1995, Petitioner participated in an oral examination of candidates for the Executive Director and the Deputy Executive Director positions with the Scranton City Housing Authority. The Commission administered the examination through two separate panels of oral examiners. Each panel consisted of two members. Patricia Graves and Forrest Schaeffer constituted the panel of examiners that examined Petitioner. The second panel was not involved in Petitioner's examination. Subsequently, Petitioner received a Notice of Examination Results, dated July 25, 1995, informing him that he failed the examination for both positions and that he was not added to the list of qualified candidates for those positions.

On September 12, 1995, Petitioner appealed the denial of his candidacy to the Commission alleging discrimination, conflict of interest, and conspiracy in the administration and scoring of his exam. Petitioner requested a hearing and sought a qualifications and exam performance re-evaluation. The Commission scheduled a public hearing for July 25, 1996.

By letter dated July 15, 1996, Petitioner requested that the Commission issue a subpoena *duces tecum* for certain documents that were in the possession of Thomas Kane, Supervisor of Housing for the City of Scranton Office of Community Development. On this same date, Petitioner also submitted a letter requesting the Commission to issue subpoenas for the testimony of certain named individuals, which included the name of Thomas Kane. However, by letter dated July 18, 1996, the Commission expressly denied Petitioner's subpoena request for the testimony of certain named individuals, including that of Thomas Kane, because the Commission deemed such testimony irrelevant to the issues that Petitioner raised on appeal challenging his test score. The Commission, however, did issue several subpoenas commanding certain individuals named therein to appear and testify before the Commission. Additionally, the Commission issued a subpoena *duces tecum* commanding John Wilk, Executive Director of the Commission, to provide certain documents to Petitioner and to appear at the hearing. This subpoena *duces tecum* expressly stated in boldface type that it was for documentation only. Although the requested documents were in fact given to Petitioner, at no time during the hearing did Petitioner introduce the documents into the record or challenge the information contained therein.

John Wilk failed to appear for the July 25, 1996 hearing. By letter dated July 26, 1996, one day after the hearing, Petitioner filed a petition with the Commission requesting that the Commission find John Wilk in contempt for failing to appear at the hearing and provide the requested documents in violation of the subpoena *duces tecum* that was served upon him. On August 1, 1996, the Commission denied Petitioner's request concluding that Petitioner did not subpoena John Wilk to testify as a witness and that Wilk did not fail to provide Petitioner with the requested documents. Petitioner subsequently filed a petition for review with this court challenging the denial of his request to find John Wilk in contempt. By order dated August 23, 1996, this court quashed the petition.

By opinion and order dated February 24, 1997, the Commission denied Petitioner's appeal concluding that Petitioner failed to show that discrimination affected his test scores. On March 7, 1997, Petitioner filed a petition for reconsideration with the Commission. On March 20, 1997, Petitioner filed his petition for review with this court seeking our

---

1. Act of February 1, 1966, P.L. (1965) 1656, *as* *amended,* 71 P.S. §§ 741.1–741.1005.

review of the Commission's order of February 24, 1997.[2]

■ Our scope of review in civil service cases is limited to determining whether an error of law was committed, constitutional rights were violated, or whether substantial evidence supports the Commission's findings.[3] *Price v. Luzerne/Wyoming Counties Area Agency on Aging,* 672 A.2d 409, 412 n. 8 (Pa.Cmwlth.1996).

■ Petitioner raises twelve overlapping issues here on appeal. The first issue that Petitioner raises on appeal is whether the Commission violated his right to due process and a fair hearing by refusing to compel John Wilk, who was served with a subpoena *duces tecum,* to appear and testify. Petitioner argues that the Commission denied his due process rights to a fair hearing by failing to enforce the subpoena for John Wilk and thereby prevented Petitioner from having his evidence presented or his case properly heard. We disagree.

The record demonstrates that Constable Reed served John Wilk with a subpoena *duces tecum* for documentation only. This subpoena also commanded John Wilk to appear at the hearing with the requested documents on July 25, 1995. Petitioner specifically objected to the absence of Wilk and requested that the Commission enforce the subpoena. The Commission, however, proceeded and closed the record without the testimony of John Wilk reasoning that the subpoena only demanded that Wilk supply documentation which was in fact supplied to

Petitioner prior to the hearing. Therefore, the Commission concluded that Wilk's presence was not necessary.

■ The presence of the custodian of documents requested by a subpoena *duces tecum* is necessary so the custodian can authenticate the documents for their admission in evidence. *Woods v. Dunlop,* 461 Pa. 35, 42–47, 334 A.2d 619, 623–25 (1975). The testimony of the custodian is limited to identifying and validating the documents. In the instant matter, the record indicates that Petitioner failed to admit the subpoenaed documents into evidence or in any way make the documents part of the record. Had Petitioner requested to admit the documents and had the Commission denied such a request, Petitioner would have a valid argument that the Commission should have required the presence of Wilk to authenticate the documents before the close of the record. By failing to challenge the accuracy of the documents previously supplied by Wilk and absent an attempt to admit the subpoenaed documents into evidence, Petitioner waived his challenge to the Commission's failure to obtain the presence of Wilk, the subpoenaed custodian.

Petitioner next argues that the Commission violated Pa. R.C.P. Nos. 234.3 and 234.8, relating to the form of subpoenas, by issuing a "homemade" subpoena that fails to comply with the form prescribed by the rules. We disagree.

■ Rule 234.8 requires that a notice to produce documents be "substantially" in the

---

**2.** Petitioner has remained *pro se* throughout all stages of this claim.

**3.** The Commission relies on this court's decision in *Muehleisen v. State Civil Service Commission,* 66 Pa.Cmwlth. 95, 443 A.2d 867 (1982), *aff'd,* 501 Pa. 335, 461 A.2d 615 (1983), and argues that our scope of review is limited to determining whether the Commission abused its discretion in denying Petitioner's application for reconsideration. We disagree. In *Muehleisen,* the petitioner filed a petition for reconsideration with the Commission one week after the Commission issued an order denying his appeal. The petitioner also filed a petition for review with this court more than thirty days after the Commission issued its original decision. Subsequently the Commission denied the petition for reconsideration. The *Muehleisen* court held that when a petition for

review is filed more than thirty days beyond the date of the Commission's decision, in violation of Pa. R.A.P. No. 1512(a), we may not review the merits of the initial adjudication and order, and our review is limited to the denial of the petition for reconsideration. Further, because the grant or denial of reconsideration is an act of discretion, we are limited to reviewing the denial of reconsideration to determine whether the Commission committed an abuse of discretion. In the instant case, however, Petitioner filed his petition for review with this court on March 20, 1997. The Commission issued its adjudication and order on February 24, 1997. Therefore, Petitioner filed his appeal within the thirty-day period prescribed by Pa. R.A.P. No. 1512(a), and we may review the merits of the Commission's original order.

form provided in the Rule. The subpoena *duces tecum* issued by the Commission, although not identical to the form provided in Rule 234.8, is substantially the same. Additionally, the Rules of Civil Procedure do not apply to statutory appeals. *Borough of Churchill Appeal*, 525 Pa. 80, 87–88, 575 A.2d 550, 553–54 (1990). Therefore, Rule 234.8 is inapplicable to the instant matter.

■ Petitioner also argues that the Commission committed an error of law by violating 4 Pa.Code § 95.23 of its own regulations.[4] Petitioner asserts that the entire exam should be voided because Dorsey Howard, Jr., Executive Director of the Harrisburg Housing Authority, socialized with other candidates. We disagree.

The record reveals that Petitioner failed to prove bias or discrimination in the administration of his oral exam. Beth Ann Risser, one of the examination administrators, testified in the following manner:

> Raters are told in training that they are to rule themselves out if they feel any family member, any close personal friends or someone who is a resident of the household would be by standard policy, they should not be rating them [sic].

> But you can rate people you know, acquaintances, whatever. And even in that instance, a rater could ask to have themselves removed if they felt they could not impartially evaluate someone.

(H.T. at 75). Risser also testified that a separate body of personnel determines which candidates are qualified to sit for examinations and that the exam panelists are not apprised of a candidate's prior qualifications or the requisite qualifications to sit for a given examination. The raters know nothing about the examinees so that they can be rated objectively against established criteria. (H.T. at 74–75).

Also, Patricia Graves, Executive Director of the Dauphin County Assistance Office, similarly testified that, as a panelist administering the oral exam to Petitioner, she had no knowledge of any of the candidates' qualifications prior to administering the exam and that she did not speak to any officials regarding the candidates or their scores prior to administering the examination. Patricia Graves further testified that she was never approached about giving certain scores to any of the candidates nor did she discuss the matter with anyone. (H.T. at 97–99). The record is devoid of any evidence establishing that any of the raters had any prior relationships with any of the examinees. The record is further devoid of any evidence establishing that Dorsey Howard, Jr. had any involvement with the scoring of Petitioner's examination. (H.T. at 31–32). The Commission, therefore, did not err in concluding that the anonymity of examinees and the competitiveness between candidates was preserved and that discrimination in the examination process did not exist.

Petitioner argues that the Commission used unqualified oral raters to administer an examination to Petitioner because they had no understanding of the technical aspects of the positions for which he was applying. Our review of the record, however, reveals that the oral raters were adequately trained and qualified for the purpose of administering the "general management examination" to Petitioner. (H.T.111–113).

■ Petitioner next asserts that the Commission failed to verify the qualifications of the other candidates and permitted unqualified candidates to be tested. Petitioner maintains that, as a result, unqualified candidates were placed on the Commission's eligibility list after successfully passing the test. The burden was on Petitioner to establish discrimination before the Commission. *Price*, 672 A.2d at 413. The Petitioner failed

---

4. Section 95.23(a)(2) provides the following:
   When the conditions under which a test is held have materially impaired its competitive nature or worth in assessing qualifications, the Director will order that the tests or appropriate sections thereof, if severable, be cancelled. New tests or parts of tests may be substituted therefore, if possible.

   Section 95.23(b) provides that [t]he director will establish appropriate procedures to insure that the identity of candidates in all competitive tests do not adversely affect the objective rating or scoring of the candidates' examination papers.

to present any evidence that even suggests that the candidates competing with Petitioner for the Executive Director and the Deputy Executive Director positions with the Scranton City Housing Authority were in any way unqualified.

Petitioner also argues that the Commission committed an error of law and abused its discretion by refusing to issue subpoenas to ensure the testimony of Judy Gatelli, Roger Sillner, and all Scranton Housing Authority Board of Directors. We disagree.

■ By letter dated July 18, 1996, the Commission denied Petitioner's subpoena request for the above named individuals because "their testimonies [were] not relevant to issues raised in Appeal No. 18959 challenging [Petitioner's] test score." The Commission's regulations authorize the Commission to compel testimony or the production of documents by way of subpoena. 4 Pa.Code § 105.14a. In *Zukoski v. Unemployment Compensation Board of Review*, 106 Pa. Cmwlth. 270, 525 A.2d 1279 (1987), this court held that an administrative agency empowered to subpoena witnesses or documents has an absolute duty to subpoena witnesses necessary for a proper determination. *Id.* 525 A.2d at 1279. However, where the number and scope of the subpoenas requested suggest that the subpoenas were sought to harass or conduct a "fishing expedition", the agency does not commit an error of law or abuse its discretion in denying the subpoenas. *Id.* 525 A.2d at 1280.

[8] In his letter requesting subpoenas for these individuals and in the petition to reconsider the denial of these subpoenas, Petitioner asserts that he will elicit testimony relating to the qualifications of the named witnesses to demonstrate that they were not qualified for their respective positions thereby showing discrimination in the selection of eligible candidates. Petitioner, however, failed to allege, and there is no evidence in the record, that the named individuals, who Petitioner sought to subpoena, were competing against Petitioner for the same positions

or that they were chosen over him. Therefore, whether or not these individuals were qualified for their present positions and received favoritism is, without more, irrelevant because it will not establish that such treatment resulted in discrimination against Petitioner. The Commission properly perceived the large number of requested subpoenas as an attempt to harass or conduct a fishing expedition. The Commission, therefore, did not abuse its discretion in refusing to issue certain subpoenas.

■ Petitioner also seems to argue that the Commission violated 4 Pa.Code § 105.16 of its own regulations by denying opposing counsel's motion to dismiss Petitioner's appeal for failing to establish a prima facie case and by not ruling on that motion until the Commission issued its adjudication and order.[5] Petitioner maintains that this ruling violated his federal civil rights under color of state law pursuant to 42 U.S.C. § 1983. Although we do not understand why Petitioner is dissatisfied with a favorable ruling by the Commission, Petitioner waived this challenge by failing to timely object or oppose the motion before the Commission. Section 703 of the Administrative Agency Law expressly precludes a party from raising any questions on appeal which were not raised before the administrative agency below. 2 Pa.C.S. § 703. Similarly, Pa. R.A.P. No. 1551 expressly precludes this court from reviewing any issues that were not raised before the government unit unless the question involves the validity of a statute, the government unit's subject matter jurisdiction, or an issue which could not have been timely raised by the exercise of due diligence. Pa. R.A.P. 1551. Because none of the exceptions are applicable in the instant case, Petitioner waived this issue.

Petitioner also argues that the Commissioner who conducted the hearing in the instant case violated Petitioner's constitutional right to a fair and impartial hearing by failing to recuse herself as requested. Petition-

5. Section 105.16(a) provides the following:
The appellant shall go forward to establish the charge or charges of discrimination. If at the conclusion of this presentation, the appellant has, in the opinion of the Commission, established a prima facie case, the appointing authority shall then be afforded the opportunity to reply to the charges.

er argues that the trier of fact in this case was also the defendant, and the hearing Commissioner should have appointed an administrative law judge as requested. Petitioner's argument suggests that there is no separation between the Commissioner who presided at the hearing and the administrative arm of the Commission. We disagree.

■ The Act bifurcates the adjudicatory functions and the administrative functions of the Commission. Under Section 201 of the Act, the Commission consists of three members appointed by the Governor with the consent of a majority of the Senate. Section 203 of the Act provides that these Commissioners are empowered to conduct investigations, hold public hearings, render decisions on appeals and record its findings and conclusions in cases of demotion, furlough, suspension, and removal. Sections 205 and 206 of the Act provide that the Commission shall appoint a director for the purpose of directing and supervising the administrative work of the Commission. Therefore, our General Assembly has erected the necessary walls separating the adjudicatory functions of the Commissioners from the administrative and enforcement functions of the Director and his staff, which thereby preserves the integrity and impartiality of the Commissioners with respect to their adjudicative roles.

■ On appeal before the Commission, Petitioner alleged discrimination and challenged the objectivity of his examination score. Neither the Act nor the Commission's regulations permit the Commissioners to direct, influence, or intercede in the examination process. Only the Director has the authority to supervise and direct the examination process. Petitioner alleged discrimination under Section 905.1 of the Act, added by Section 25 of the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.905a. As a result, the Commissioners have exclusive authority to hold a public hearing under Section 951 of the Act, 71 P.S. § 741.951. *Togans v. State Civil Service Commission,* 69 Pa.Cmwlth. 431, 452 A.2d 576, 578 n. 3 (1982). Because the Commissioners are statutorily isolated from administrative matters within the Commission, they were not party defendants in the instant appeal, as argued by Petitioner.

Additionally, the Commissioners are the statutorily authorized hearing examiners in appeals involving allegations of discriminatory conduct within the Commission. We, therefore, conclude that the Commissioner who presided over the instant appeal properly denied Petitioner's request for recusal.

■ Petitioner also argues that a prearranged conspiracy existed to deliberately give him a low examination score, and he challenges the Commission's finding to the contrary. The Commission specifically found that Petitioner "failed to establish any impropriety in the manner in which his test and score was conducted." (Commission's Adjudication at 7). We may not disturb this finding unless it is unsupported by substantial evidence. *Glover v. Norristown State Hospital Department of Public Welfare,* 90 Pa.Cmwlth. 58, 494 A.2d 39, 40 (1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion without weighing the evidence or substituting the judgment of the Commission. *Id.* We have reviewed the entire record and conclude that there is substantial evidence to support the Commission's finding that there was no prearranged conspiracy targeted at Petitioner with respect to his exam scores. Additionally, there is no evidence that supports Petitioner's allegations of impropriety and conspiracy.

Accordingly, we affirm the order of the Commission.

### ORDER

AND NOW, this 25th day of November, 1997, the order of the State Civil Service Commission, at No. 18959, dated February 24, 1997, dismissing the appeal of Robert E. Quinn, is hereby affirmed.