**Diane FLORIAN, Petitioner,**

v.

**STATE CIVIL SERVICE COMMISSION (Department of Military and Veterans Affairs), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 22, 2003.
Decided Sept. 30, 2003.

at the Southwestern Veteran's Center (Center) in Pittsburgh from September 27, 1997 until September 25, 1999, when she was terminated due to the alleged occurrences of three different medication errors she committed during her two years of employment. She appealed her dismissal to the Commission which sustained the discharge but then, on appeal, this Court reversed the Commission's decision concluding that the evidence only supported one medical error, and that this one error standing alone was insufficient to support her dismissal from employment.

In compliance with our order directing reinstatement, by letter dated March 6, 2002, the Department reinstated Florian as a full time civil service LPN at the Center but conditioned the reinstatement upon her passing a pre-reinstatement physical examination.[1] Florian reported for the required physical which was conducted by a nurse practitioner assigned to the Center. In response to questions she was asked by the nurse practitioner during the exam, Florian indicated that she had some back pain. As a result, the Center's Director of Nursing, Judith Trout–Weyers (Director Trout–Weyers), gave Florian several medical forms for her doctor to complete and return as soon as possible, certifying that there were no medical restrictions preventing her from returning to work.

Because it had not received the required forms, by letter dated April 15, 2002, the Center informed Florian that it had yet to receive any additional information regarding Florian's ability to work as an LPN and asked Florian to report to work or contact the Center by April 23, 2002. It

Peter M. Suwak, Washington, for petitioner.

Michael C. Barrett, Annville, for respondent.

Before PELLEGRINI, Judge,
SIMPSON, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge PELLEGRINI.

Diane Florian (Florian) appeals from an order of the State Civil Service Commission (Commission) upholding the Department of Military and Veteran's Affairs' (Department) termination of her employment due to her failure to respond to a reinstatement offer; the offsetting of her back pay award by unemployment benefits and wages she received prior to her reinstatement offer; its failure to pay her interest and fringes; and its refusal to pay her counsel fees that resulted in the reinstatement offer.

Florian was employed by the Department as a Licensed Practical Nurse (LPN)

---

1. The pre-reinstatement physical was required of all employees returning to duty following extended absences and consisted of recording the employee's vital signs, obtaining responses to a set of questions, listening to the employee's heart and lungs, and checking the employee's ankles for edema.

warned, "Failure to either provide medical documentation of an inability to perform the essential functions of an LPN or report for work by that date will indicate your non-interest in a LPN position at [the Center]." Florian did not contact the Center, provide the requested medical documentation or report for work by April 23, 2002.[2]

By letter dated May 7, 2002, the Department advised Florian that her failure to provide the requested documentation or to report to work as directed was being viewed as a refusal of the job offer at the Center effective April 23, 2002. In connection with calculating the amount of back pay that it owed Florian, the Center also informed Florian in the May 7th letter that it would process her work history to reflect the changes from September 25, 1999 through April 23, 2002. The Department stated that Florian would receive regular pay status through February 15, 2002, and leave without pay status from February 16, 2002 to April 23, 2002. The letter requested that Florian provide information regarding her earnings between September 26, 1999 and February 15, 2002, which would be deducted from her back pay award. Florian responded by appealing the Department's actions to the Commission, arguing that the Department did not act properly when it determined that she had abandoned reinstatement and when it declined to resolve a dispute concerning the calculation of a back pay award.

Before the Commission, Florian testified that after receiving the March 6th letter offering her reinstatement conditioned on the physical exam, she reported for and took the physical despite her reservations about returning to the job. Florian testified that during the examination, the nurse practitioner asked her if she had back pain. "I answered, 'Yes.'" She also testified, "He asked me if I had ever sustained a work related back injury. I told him in 1996." Florian stated that after the exam, she was sent to meet with Director Trout–Weyers, who, "... gave me a bunch of papers and said because we have to address your limitations, you need to take these out there ... You have to do this immediately." She was told to take the forms to her primary care physician, but testified that when she did, her physician would not fill them out because, "he never treated [her] for a back injury." (Reproduced Record at 60a; 65a–66a.)

Florian also testified that she believed the Department was not really concerned with her back, but only raised the issue "to generate an additional problem."[3] (Reproduced Record at 63a.) She pointed out that in a May 2, 2002 letter, Commonwealth records had not been revised to include the Commonwealth Court's Order reversing the Commission's original adjudication, but still reflected the September 1999 removal. (Reproduced Record at 70a.) She testified that on the issue of

---

2. Counsel for Florian sent a letter to the Center dated April 22, 2002, stating that she expected to receive back pay, that there were errors on her employment records effecting her ability to work a new civil service position, and that they saw no justification for the requested medical forms or pre-reinstatement physical exam. The letter alleged that these errors and requirements in effect "[amount] to a constructive discharge." Further, it stated that Florian would not be returning to her

position until those concerns were resolved, but that she was not abandoning the position.

3. Florian also related her concerns about retaliation by staff at the Center as part of her reason for not returning to work. Even if relevant, the testimony showed that nearly the entire management team and all of her previous supervisors at the Center had changed from the time of her termination; therefore, her argument is without merit.

reinstatement, "[She] felt [she] was sabotaged." (Reproduced Record at 108a.)[4]

To support its assertion that a good faith offer of reinstatement was made, Employer offered the testimony of William Bergin (Nurse Bergin), the nurse practitioner who conducted Florin's physical examination. Nurse Bergin testified that he asked Florian whether or not she thought a reoccurrence of the injury would interfere with her ability to perform her duties and she responded, "Yes." Further, he stated that his questions about her previous back injuries were asked because it was on the form prepared during the physical examination. Nurse Bergin stated that he was not aware of Florian's back injury prior to asking her the question. He also testified that he and an associate doctor, Dr. Ward, who was present in the room during appellant's examination, were reluctant to sign the form indicating that Florian was free of any "physical or mental conditions that would in any way handicap the employee in carrying out assigned duties."

Mary Yurko, the Human Resource Director at the Center, testified that a physical examination was required of all new employees and all employees returning from extended absences, including those

**4.** On the issue of back pay, she testified that during the period between her initial termination and offer of reinstatement, she received $5,025 in unemployment benefits and $57,025 in wages. If Florian had continued employment at the Center, she would have earned $78,689, accrued annual leave valued at $5,104.31, and two personal days valued at $263.84.

**5.** Director Trout–Weyers also testified that based on the recommendations of Nurse Bergin and Dr. Ward, she gave Florian additional medical forms to have her primary care physician fill out "as soon as possible," but those forms were never returned. David Allen, Chief of Special Pay and Disability Processing Sections in the Office of the Budget's Bureau of Commonwealth Payroll operations, explained the Center's back pay calculations.

returning from a termination or non-illness-related leave without pay. She also explained why, as of May 2, 2002, Florian's personnel record had not been revised to show her reinstated status. She testified that when Florian was initially removed in September 1999, a computer code was put into a previously-used computer system that reflected her status as "terminated." She further stated that if an employee was reinstated following termination, the computer record was modified at the time the individual returned to work.[5]

On December 17, 2002, the Commission issued its adjudication and order finding that Florian had rejected the offer of employment effective April 23, 2002; that she was entitled to back pay from the date of termination to April 23, 2002; and that the Department was entitled to offset that back pay award by the unemployment benefits and wages received in lieu of her civil service position earned by Florian as a LPN during that period of time. The Commission awarded Florian $22,006.87 in back pay, which equaled $78,689.00 in wages she would have received, increased by Florian's leave entitlement and offset by her earnings in lieu of her civil service employment and unemployment compensation.[6] Florian's appeal followed.[7]

While the exclusion of some items are in dispute, the calculations are not.

**6.** The Commission's calculation of back pay was based on testimony given at the hearing. *See* footnote 4. The total figure of $22,006.87 is calculated as follows: $78,689.00 in wages she would have received had she remained with the Center from September 26, 1999 through April 23, 2002, plus her accrued annual leave of $5,104.31, plus two personal days wages of $263.84, minus $5,025.00 in unemployment benefits, minus her gross earnings of $43,200.00 for the part-time work from December 24, 1999 until November 26, 2001, minus her gross earnings of $13,825.28 for her employment with Presbyterian University Hospital from November 26, 2001 until April 23, 2002.

**7.** Our scope of review of the Commission's decision is limited to determining whether

## I.

 Florian contends that she did not voluntarily abandon her reinstatement rights by not returning to work because the reinstatement was not a bona fide offer as it was conditioned upon her completing a medical examination. However, an employer may condition an employee's return to work after an absence if the job is physically demanding in nature. *See City of Philadelphia v. Com., Pennsylvania Labor Relations Board, American Federation of State, County and Municipal Employees, Local 159, AFL–CIO,* 140 Pa. Cmwlth. 322, 592 A.2d 823 (1991); *Kleschick v. O'Neill,* 35 Pa.Cmwlth. 130, 384 A.2d 1370 (1978). A licensed practical nurse's job involves lifting, movement and caring of patients. Because it is a physically demanding job, the Department had a uniform policy requiring a physical examination of all employees following an absence. The non-arbitrary application of this exam requirement is a reasonable basis upon which to condition both the employee's employment and reinstatement.

If conditioning a reinstatement upon the taking of a physical examination is proper, Florian argues that the Commission erroneously determined that the Center could refuse to reinstate her based on her failure to obtain additional medical documentation at her own expense. Ignoring that this argument was not one of the proffered reasons she gave to the Department as to why she was not complying with her request, Florian was able to return to work on April 23, 2002, without condition and failed to do so. In its April 15, 2002 letter, the Center provided three options for Florian to preserve her reinstatement rights: either report to work by April 23, 2002; provide medical documentation that she was unable to work; or contact the Center by calling either of two named individuals. It also stated that her failure to act in any of the three ways would be construed as a rejection of the offer of reinstatement. Florian chose not to act on any of those options, but instead had her attorney send a letter dated April 22, 2002 (received by the Center on May 28th 2002) in which he not only challenged the Department's request for the pre-reinstatement physical examination claiming that such requirements amounted to "a constructive discharge," but also stated that Florian would not be returning to her employment "until these outstanding concerns are resolved."

Because an employee's failure to return to full unrestricted duty or to exercise any other available option to preserve employment gives an employer just cause for removal, *Mihok v. Department of Public Welfare, Woodville State Hospital,* 147 Pa. Cmwlth. 344, 607 A.2d 846 (1992); *Marsh v. Department of Public Welfare,* 53, 53 Pa.Cmwlth. 354, 417 A.2d 862 (1980), and Florian did nothing to preserve her employment, the Commission properly found that Florian had abandoned her right to restatement as of April 23, 2002.

## II.

 Florian raises a number of objections as to the calculation of back wages and benefits centering not on the calculation, but on items that were included or failed to be included in the calculation. When an employee is making a claim for

---

constitutional rights have been violated, errors of law have been committed, or whether findings of fact are supported by substantial

evidence. *Naso v. State Civil Service Commission (Department of Corrections),* 696 A.2d 923 (Pa.Cmwlth.1997).

back pay and benefits, the employee is required to establish a reasonable basis for computation of damages. Only reasonable certainty as distinguished from absolute certainty on the one hand and mere conjecture on the other hand as to the amount of back pay need be established. *Elias v. Department of Public Welfare, Polk Center*, 98 Pa.Cmwlth. 218, 511 A.2d 887 (1986).

■ As to her claim that the Commission improperly offset wages she earned for employment between her initial termination and offer of reinstatement, Florian contends that those wages should have been wholly excluded or, at most, only the amount earned during hours when she would have been working at the Center should have been excluded. Section 952 of the Civil Service Act[8] provides that where an employee is reinstated, the Commission, in its discretion, may award the employee salary or wages lost, including employee benefits. An offset for wages earned can be made by the Commission if they were earned "in lieu of working at the civil service position." In other words, if an employee would not have been able to work at the job if the employee had been working at their civil service position, then the earnings would be offset; if, however, other earnings were supplemental pay that could have been earned even if the person was working at their civil service position, an offset would not be proper. *Elias*

■ As to whether the amounts Florian earned were "in lieu of" or "supplemental" to her Civil Service position, the Commission found:

[Florian] has, however, presented no evidence establishing what, if any, portion of the part-time employment was not in lieu of her employment at [the Center]; she has instead asserted without justification that "60% is a more valid figure ..." Ap. Reply Br. p. 6. [Florian] has acknowledged that: 1.) while previously employed at [the Center], she did not have part-time employment; and, 2.) the reason for not having part-time employment during that period still exists and apparently existed continuously during the period of improper removal.

(Commission's decision at 31.) Because it was Florian's burden to establish that the amount of wages she earned were not in lieu of compensation and her calculation was speculative, at best, with no supporting evidence, the Commission's decision to offset those wages was not an abuse of discretion.

■ Florian also claims that the Commission erred in denying her request for loss of fringe benefits, including her health insurance, lost sick leave, lost personal leave and lost opportunity to have received time-and-a-half on holidays. An employee is entitled to reimbursement of the value of employee benefits. *See* Section 952 of the Civil Service Act, 71 P.S. § 741.952. While the Commission included in the back pay award a payment equivalent to such personal leave as would have been *current* as of April 23, 2002, it did not include sick leave payments because those payments were only available under limited circumstances that were not applicable to Florian.[9]

---

8. Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. § 741.952(c). That section provides:

In the case of any employe removed, furloughed, suspended, or demoted, the commission may modify or set aside the action of the appointing authority. Where appropriate, the commission may order reinstate-

ment, with the payment of so much of the salary or wages lost, including employe benefits, as the commission may in its discretion award.

9. No evidence was presented addressing any of the indicated circumstances that would justify the award of a payment of sick leave in a

██ As to her claim for health insurance premiums and the holiday premium pay, the Commission denied those items because Florian presented no evidence before the Commission that she incurred any heath insurance costs as a result of her termination and did not prove that during her past employment at the Center, she had worked on holidays or that she would have worked those days during the applicable period. Because it was Florian's burden to do so, the Commission properly found that Florian did not meet her burden to have those items included in the back pay award.

 Finally, Florian argues that the Commission erred in not awarding interest on the back pay and not awarding "front pay" or counsel fees. Because monetary damages that the Commission is allowed to award under Section 952 of the Civil Service Act is limited to "salary and wages," we have held that "nothing in the Civil Service Act authorizes the Commission to award interest." *Elias,* 511 A.2d at 893–894. The same is true for counsel fees. *See Lehotzky v. State Civil Service Com-*

*mission,* 82 Pa.Cmwlth. 612, 477 A.2d 13 (1984.) As to "front pay," pay equal to her civil service salary until she secures comparable employment, again, "front wages" are not authorized by Section 952 of the Civil Service Act and Florian did not raise her request for front pay in her complaint or at anytime during the hearing before the Commission, her demand was not properly preserved for appeal and is, thus, waived. *See* Pa. R.A.P. 1551(a) (no issue shall be heard on appeal which was not raised below before the government unit).

Accordingly, the decision of the Commission is affirmed.

### *ORDER*

AND NOW, this *30th* day of *September,* 2003, the order of the State Civil Service Commission is affirmed.

---

lump sum—i.e., retirement after age 60 or disability retirement or retirement after 25

years of service or the death of the employee.