# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Markeeta Holmes, : 
 : 
                Petitioner : 
 : 
           v. :   No. 694 C.D. 2015
 : 
State Civil Service Commission :   Submitted: December 4, 2015
(Department of Human Services), : 
 : 
             Respondent : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE MARY HANNAH LEAVITT, Judge[1]
                   HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**              **FILED: April 18, 2016**

      Markeeta Holmes, representing herself, petitions for review of the Order of the State Civil Service Commission (Commission) that dismissed Ms. Holmes' request for a determination of the adequacy of the compensation she received from the Chester County Assistance Office, Department of Public Welfare[2] (Appointing Authority) following her reinstatement from removal. On appeal, Ms. Holmes

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[2] The Department of Public Welfare is now called the Department of Human Services.

argues that, pursuant to Section 952(c) of the Civil Service Act (Act),[3] the Commission erred by: (1) denying Ms. Holmes' request for additional lost wages; and (2) denying Ms. Holmes' request for reimbursement of the retirement funds she withdrew from her pension after her removal.

The factual background preceding Ms. Holmes' removal from employment and the subsequent modification of that removal to a thirty-day suspension is set forth in greater detail in <u>Markeeta Holmes v. State Civil Service Commission (Chester County Assistance Office, Department of Public Welfare)</u> (Pa. Cmwlth., No. 1795 C.D. 2013, filed June 16, 2014) (<u>Holmes I</u>). We, therefore, summarize only those events relevant to our disposition in this matter.

Ms. Holmes was employed by the Appointing Authority as an income maintenance caseworker since November 1998. <u>Holmes I</u>, slip op. at 2. On November 9, 2011, Ms. Holmes' received a letter (Removal Letter) advising her that at the close of business on November 10, 2011, she would be removed from her position as income maintenance caseworker because she acted on a relative's case in contravention of the Appointing Authority's Code of Conduct (Code) and other policies. (Commission Decision, February 18, 2015, Finding of Fact (FOF) ¶ 1); <u>Holmes I</u>, slip op. at 2-7. Ms. Holmes' removal was based on the Pre-Disciplinary Conference panel's reasoning that "Ms. Holmes had not accepted

---

[3] Act of August 5, 1941, P.L. 752, <u>as amended</u>, 71 P.S. § 741.952(c), added by Section 21 of the Act of June 26, 1989, P.L. 47.

responsibility for her actions" and that she should be disciplined accordingly.[4] Holmes I, slip op. at 5.

After Ms. Holmes was removed, but before her removal was converted to a suspension, Ms. Holmes' withdrew her entire pension from the State Employees' Retirement System (SERS). (R.R. Item[5] 8a.) On January 25, 2012, Ms. Holmes was notified via letter (Suspension Letter) "that her removal, effective at the close of business November 10, 2011, had been rescinded" and that the time period of "November 11[, 2011] through December 22, 2011 would be deemed a suspension of thirty working days." (FOF ¶ 2; R.R. Item 12a.) The Suspension Letter stated that Ms. Holmes would be "made whole for *any lost wages, benefits,* and seniority *for all time beyond* the initial thirty (30) working days of the suspension," and that Ms. Holmes should report to work at 8:30 a.m. on Monday, January 30, 2012. (FOF ¶¶ 2-3; R.R. Item 12a (emphasis added).)

Ms. Holmes appealed her suspension to the Commission,[6] which, on February 8, 2013, dismissed the appeal and sustained Ms. Holmes' thirty-day

---

[4] Ms. Holmes appealed her removal, and during preparations for the appeal, the Appointing Authority's counsel shared a September 8, 2011 letter (written by Ms. Holmes) with Executive Director Diane Robertson (Director Robertson) showing that Ms. Holmes was, in fact, apologetic over her actions. Holmes I, slip op. at 5-6. Director Robertson concluded that "a suspension was more appropriate." Holmes I, slip op. at 8. On January 24, 2012, the Appointing Authority's Motion for Continuance of the removal hearing scheduled for January 30, 2012 was granted, due to the fact that Ms. Holmes' removal was rescinded. (Commission Order on Motion for Continuance, January 24, 2012, R. Item 7, vol.1.)

[5] References to the reproduced record are designated as "R.R. Item ___." References to the certified record are designated at "R. Item ___, vol. ___."

[6] The hearing was scheduled for January 31, 2013. (Notice of Public Hearing, December 10, 2012; R. Item 3, vol. 1, Ex. F-3.)

3

suspension. (Commission Decision, August 8, 2013, at 23-24); Holmes I, slip op. at 9. Ms. Holmes filed a request for reconsideration of the Commission's decision sustaining her suspension, which was denied via letter dated September 13, 2013. Ms. Holmes then petitioned this Court for review.

On appeal, this Court affirmed the Commission's decision because, *inter alia*, the Appointing Authority met its burden of establishing that it had good cause for suspending Ms. Holmes. The Court remanded the matter to the Commission because it did not address the issue of whether, pursuant to the Suspension Letter, "Ms. Holmes ha[d] been made whole" following her reinstatement. Holmes I, slip op. at 21. Thus, the Commission was ordered to apply Section 952(c) of the Act. This Court stated:

> Ms. Holmes asserts that she has suffered losses as a result of her removal and subsequent reinstatement that have not been remedied despite the Appointing Authority's indications that she would "be made whole for any lost wages, benefits, and seniority for all time beyond" the thirty-day suspension period. We recognize that the remedy provisions found in Section 952(c) of the Act are used where the Commission orders reinstatement of an employee. However, *given the very unique situation in this matter, where the Appointing Authority rescinded a removal in favor of a suspension and specifies that the employee should be made whole, the Commission should apply this provision and consider Ms. Holmes' assertions*.

See Holmes I, slip op. at 20 (emphasis added) (citations omitted).

Pursuant to this Court's remand order in Holmes I, the Commission held a second hearing on October 29, 2014,[7] at which Ms. Holmes testified on her own behalf and the Appointing Authority presented the testimony of Human Resource

---

[7] Ms. Holmes represented herself at the second hearing.

4

Director Wilhelmina M. Warren, as well as documentary evidence. At the remand hearing, the Commission considered only "whether [Ms. Holmes] ha[d] been made whole and what, if any, additional actions by the parties [were] needed to [make her whole]." (Commission Decision, February 18, 2015, at 4.)

In her testimony, Ms. Holmes asserted that she "ha[d] not been made whole as it relates to [her] retirement benefits." (Hr'g Tr. at 21, R. Item 2, vol. 2.) Ms. Holmes cited to numerous documents she received from SERS indicating the amount withdrawn and the balance owed on her SERS account, totaling approximately $42,569.52 as of August 12, 2014. (SERS Response Letter on Estimate of Current Debts, R.R. Item 9a.) Ms. Holmes asserted that "[h]ad [she] been given the 30-day suspension initially [she] would not have taken an early retirement," she "would not have withdrawn any money from [her] retirement fund," and she claimed that her decision to withdraw was not voluntary. (Hr'g Tr. at 30, 42.) As to her use of the money, totaling approximately $30,194.98 after taxes, Ms. Holmes stated that "[n]ot knowing where [her] next source of income was coming from, [she] paid down credit cards, bills, [and] legal fees[,] and [she] tried to secure [an] additional source of income." (Hr'g Tr. at 41-42.) As such, Ms. Holmes argued that she was entitled to reimbursement of the monies withdrawn from her SERS account.

Ms. Holmes then acknowledged her receipt of back pay covering the period from December 23, 2011 to February 3, 2012 (not including February 3, 2012), which included both lost wages and leave benefits. (Commission Decision at 8; Hr'g Tr. at 26.) Ms. Holmes claimed, however, that she was not compensated for

5

lost wages and leave benefits, and should have been, for February 3, the week of February 6 through February 10, and February 13, 2012, totaling $1,316.70. (FOF ¶ 4; Hr'g Tr. at 26, 30.) With respect to those days, for which Ms. Holmes claimed she was not compensated, Ms. Holmes then testified that "[her] lawyer and the Appointing Authority had to work out the provisions for [her] return" and that "the parties had been in discussion regarding the matter," as stated in the letter allegedly sent by her lawyer to the Appointing Authority dated February 8, 2012. (Hr'g Tr. at 23-24; R.R. Item 10a.) Ms. Holmes conceded that she returned to work on February 14, 2012, as stated in her attorney's letter, however, she also stated that she "d[id]n't know where th[e] date of [February 3, 2012] originated" as the date the Appointing Authority used to end her back pay award for lost wages and leave benefits. (Hr'g Tr. at 27-28.)

Ms. Warren testified that because Ms. Holmes' receipt of the January 25, 2012 Suspension Letter, directing her to return to work on January 30, 2012, "was so close to the date of her return [the Appointing Authority] extended [the date of return] to February 6[]." (Hr'g Tr. at 51-52.) Ms. Warren also testified that Ms. Holmes waited to return to work until February 14, 2012 because "[a]ccording to the file notes . . . she want[ed] to give her employer a two-week notice before returning to work." (Hr'g Tr. at 52.) Ms. Warren further testified that the Appointing Authority only sought to compensate Ms. Holmes for the period of December 23, 2011 through February 3, 2012, "which would have been the end of that pay period." (Hr'g Tr. at 53.) Ms. Warren indicated that the reason for the February 3 end date for back pay was "[b]ecause she was invited to return on February 6[] which would have been that first week after the pay period and she

6

had requested to come two weeks later." (Hr'g Tr. at 53.) Based on documentary evidence entered upon the record, Ms. Warren maintained that "[Ms. Holmes] was given back all back pay[, and] [h]er benefits were restored. Benefits meaning her seniority . . . medical benefits . . . supplemental benefits . . . retirement contributions . . . [anticipated] annual, personal and comp . . . w[ere] restored." (Hr'g Tr. at 54.) Ms. Warren then testified that in her time at previous government jobs,[8] she was required to comply with civil service adjudications and the granting of back pay and benefits to employees, but she was never asked to reimburse an employee for funds withdrawn from a SERS retirement account. (Hr'g Tr. at 55-56, 58-59.)

The Commission made new findings of fact[9] acknowledging the extended return date of Monday, February 6, 2012 and the actual return date of Tuesday, February 14, 2012. (FOF ¶ 3.) Further, it found that "[t]he appointing authority did not compensate appellant for the period from February 6 to February 13" and "[Ms. Holmes] was recorded as on approved leave without pay for that period." (FOF ¶ 4.) The Commission further found that at the time Ms. Holmes was removed from her position, "[she] had the following amounts of current, accumulated leave:" (a) annual – 33.88 hours; (b) compensatory – .33 hours; (c)

---

[8] Ms. Warren testified that her previous government jobs were with the Philadelphia County Assistance Office and the Department of Corrections, both of which are civil service agencies. (Hr'g Tr. at 55-56.)

[9] We note that, as per this Court's remand order, and "'given the very unique situation in this matter, where the Appointing Authority rescinded a removal in favor of a suspension and specifies that the employee should be made whole,'" the Commission was directed to apply Section 952(c) and did so "as [it] would have been applied had [the Commission] ruled in favor of the appeal of an employee who successfully challenged his removal." (Commission Decision at 7 (quoting Holmes I, slip op. at 20).)

personal – 21.45 hours; and (d) sick – 23.15 hours ("[she] was not eligible to receive compensation for sick leave[,]" however). (FOF ¶¶ 5-6.) The Commission credited the testimony of Ms. Warren and found that Ms. Holmes received compensation for all of the above accumulated annual, compensatory, and personal leave at the time she was removed. (FOF ¶ 6.)

The Commission noted that "[Ms. Holmes'] 23.15 hours of previously accrued sick leave was restored" at the time she was reinstated, but the "annual, compensatory, and personal leave she had already been compensated for was not restored," leaving her with an accrued leave balance of zero upon her return. (FOF ¶ 7.) Additionally, the Commission found that "[b]y March 8, 2012, [Ms. Holmes'] leave account included the annual and personal leave, which would have accrued during the period from December 23, 2011 to February 3, 2012." (FOF ¶ 8.)

The Commission denied Ms. Holmes' requests for: (1) payment of additional lost wages and benefits for the week of February 6 through February 10, and for February 13, 2012 because she was invited to come back to work on February 6, 2012; (2) reimbursement of her SERS account because that fund cannot "be deemed 'salary or wages lost'"; and (3) legal expenses incurred during her appeal based on prior case law. (Commission Decision at 9, 11, 13-14.) On the overarching question of whether Ms. Holmes had been made whole by the Appointing Authority following her reinstatement, the Commission concluded that "[Ms. Holmes] ha[d] failed to present evidence establishing any entitlement to any

8

additional payment of salary or wages lost or employee benefits awardable under Section 952(c) of the Civil Service Act . . . ." (Commission Decision at 14.)

On March 3, 2015, Ms. Holmes requested reconsideration of the Commission's February 18, 2015 Order because, she argued, she had still not been made whole with respect to lost wages and her SERS retirement account. (Request for Reconsideration, R.R. Item 5a.) By letter dated March 19, 2015, the Commission denied the request. Ms. Holmes now petitions this Court for review of the Commission's Order.[10]

---

[10] Ms. Holmes' Petition for Review in this matter was timely filed from the Commission's order denying reconsideration but challenged generally the Commission's determination on the merits. (Petition for Review.) In an "Ancillary Petition for Review," Ms. Holmes indicated that she was appealing the order denying reconsideration and that the Commission did not comply with this Court's order on remand in its initial decision. (Ancillary Petition for Review.) "The decision to grant or deny such a motion is a matter of administrative discretion and will be reversed only for an abuse of discretion," which is "more than an error of judgment." Payne v. Workers' Compensation Appeal Board (Elwyn, Inc.), 928 A.2d 377, 379 (Pa. Cmwlth. 2007).

> An abuse of discretion occurs not merely when the [lower tribunal] reaches a decision contrary to the decision that the appellate court would have reached. Rather, an abuse of discretion occurs when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

Id. (internal quotations omitted). We observe that the Commission does not assert that our review is limited only to the order denying reconsideration and argues that there was no error in its merits determination. Therefore, in reviewing whether the Commission abused its discretion in denying reconsideration, we will consider the merits of the underlying decision in determining whether the Commission's judgment was manifestly unreasonable, or it did not apply the law.

On appeal,[11] Ms. Holmes argues that the Commission erred in denying her "reasonable" request for lost wages for the dates of February 3, February 6 through February 10, and February 13, 2012, totaling $1,316.70, and for not accepting her return date of February 14, 2012. (Ms. Holmes' Br. at 11-12.) She contends that the Commission ignored the statute and "did not follow the Commonwealth Court's directive" to apply the remedy provisions of Section 952(c) of the Act, and therefore, she should have been, but was not made whole for the dates in question. (Ms. Holmes' Br. at 8.) Ms. Holmes relies on the Suspension Letter as support for her entitlement to additional lost wages, which states "[y]ou will be made whole for any lost wages, benefits, and seniority for all time beyond the initial thirty (30) working days of the suspension." (Suspension Letter, R.R. Item 12a.) Essentially, Ms. Holmes argues generally that the Commission's findings of fact are not supported by substantial evidence. After an extensive review of the record and the Commission's findings, we conclude that the findings are supported by substantial evidence in the record.

In reviewing civil service appeals, we recognize that "[q]uestions of credibility and the weight to be accorded evidence are determined by [the] Commission." Thompson v. State Civil Service Commission, 863 A.2d 180, 184 (Pa. Cmwlth. 2004). This Court "may not weigh the evidence or substitute our judgment for that of the Commission when . . . its essential findings are . . . supported by substantial evidence." Benjamin v. State Civil Service Commission,

_____

[11] In civil service cases, this Court's review "is limited to determining whether the factual findings are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." Department of Transportation v. State Civil Service Commission (Bocchinfuso), 84 A.3d 779, 783 n.2 (Pa. Cmwlth. 2014).

10

332 A.2d 585, 588 (Pa. Cmwlth. 1975). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . ." Quinn v. Pennsylvania State Civil Service Commission, 703 A.2d 565, 571 (Pa. Cmwlth. 1997). "When reviewing a Commission decision, we view the evidence, and all reasonable inferences arising from the evidence, in a light most favorable to the prevailing party." Perry v. State Civil Service Commission (Department of Labor and Industry), 38 A.3d 942, 948 (Pa. Cmwlth. 2011).

Ms. Holmes contends that she was not made whole for February 3, February 6 through February 10, and February 13, 2012. We address February 3, 2012 first. As a result of her reinstatement, Ms. Holmes was provided with a back pay settlement worksheet, which indicates that she was paid for the full five days the week of January 30, 2012 to February 3, 2012 "*inclusive*." (R.R. Item 11a (emphasis added).) The Commission also credited the testimony of the Appointing Authority's sole witness, Ms. Warren, as to Ms. Holmes' back pay award, as shown on the settlement worksheet and other Appointing Authority records, and it was within the Commission's province to do so. Benjamin, 332 A.2d at 588. Ms. Warren's credited testimony and the documentary evidence constitutes substantial evidence that supports the Commission's finding that Ms. Holmes was already fully compensated for February 3, 2012.

As for the dates of February 6 through February 10, and February 13, 2012, the Appointing Authority, not the Commission, decided to award Ms. Holmes back pay and benefits from the time her suspension ended and for all time beyond that date. The Appointing Authority later decided that it would only provide back pay

11

until February 3, 2012. We have held that "[t]he Commission has discretion to determine whether or not a reinstated employee is entitled to back pay." Elias v. Department of Public Welfare (Polk Center), 426 A.2d 762, 764 (Pa. Cmwlth. 1981). It is clear, based on Ms. Warren's testimony and other evidence in the record, that Ms. Holmes was directed to return to work on February 6, 2012, and chose not to do so.[12] She did not return until February 14, 2012. As a result, the Appointing Authority denied back pay and benefits, but only for the week beginning February 6 through February 10, and Monday, February 13, 2012, of the following week, and placed Ms. Holmes on approved leave without pay until her return on February 14, 2012. Reviewing all of the evidence and the reasonable inferences drawn therefrom in the light most favorable to the Appointing Authority, we conclude that "a reasonable mind might accept [it] as adequate to support [the] conclusion" that Ms. Holmes was directed to report to work on February 6, 2012, there was no reason she could not return to work on that date,[13] and Ms. Holmes did not actually return until February 14, 2012. Quinn, 703 A.2d at 571.

---

[12] The Appointing Authority extended the initial return date from January 30, 2012, to February 6, 2012.

[13] The hearing transcript reveals, and the Appointing Authority has conceded, that Ms. Holmes wanted to give her interim employer two weeks' notice of her intent to leave her employment. (Hr'g Tr. at 52.) Further, the hearing transcript shows that Ms. Holmes worked at QVC as a seasonal employee. (Hr'g Tr. at 33-35.) Aside from this seasonal work around the holidays, it is unclear whether Ms. Holmes worked at QVC during the dates in question. Ms. Holmes presented no evidence about where she actually worked in the interim, whether giving two weeks' notice was required of her, or why her request allegedly made to the Appointing Authority to give her interim employer two weeks' notice was denied. (Commission Decision at 9.)

With respect to the allegedly agreed upon return date of February 14, 2012, as mentioned in the letter from her attorney to the Appointing Authority, we conclude that Ms. Holmes did not offer any other evidence to prove that there was, in fact, an agreement between Ms. Holmes, her attorney, and the Appointing Authority about the February 14, 2012 return date. Further, Ms. Holmes did not present any evidence that the letter was sent or that the Appointing Authority received the letter. (R.R. Item 10a.) The letter simply stated, "Ms. Holmes indicates that she will return to work on February 14, 2012[,]" and without more, we cannot conclude that Ms. Holmes was justified in ignoring her employer's direction to work on February 6, 2012. In performing a substantial evidence analysis, "[i]t is irrelevant whether the record contains evidence to support findings other than those made by the fact finder; the critical inquiry is whether there is evidence to support the findings actually made." Keslosky v. Old Forge Civil Service Commission, 73 A.3d 665, 671 (Pa. Cmwlth. 2013), petition for allowance of appeal denied, 89 A.3d 1286 (Pa. 2014). We conclude that the Commission's findings of fact, and conclusions therefrom, are based upon substantial evidence, and that the Commission did not err by denying back pay for February 6 through February 10 and February 13, 2012.

Ms. Holmes next claims that she is entitled to reimbursement of her SERS retirement account monies she withdrew immediately after she was removed. "When an employee is making a claim for back pay and benefits, the employee is required to establish a reasonable basis for computation of damages[,]" and "[o]nly reasonable certainty as distinguished from absolute certainty on the one hand and mere conjecture on the other hand as to the amount of back pay need be

13

established." Florian v. State Civil Service Commission (Department of Military and Veterans Affairs), 832 A.2d 1171, 1176-77 (Pa. Cmwlth. 2003).

Here, the Commission sustained the Appointing Authority's denial of reimbursement of the SERS monies because Ms. Holmes presented no evidence that those funds could "reasonably be deemed 'salary or wages lost'" under the Act. (Commission Decision at 13.) In fact, the record shows the contrary. In a letter dated May 15, 2012, from SERS to Ms. Holmes acknowledging her reinstatement by the Appointing Authority, Ms. Holmes was made aware of "[SERS] Management Directive 570.8 Amended[, which] provides that [SERS] members who are reinstated as if there was no break in employment are required to return any monies withdrawn from the State Employees' Retirement System (SERS) at the time of termination." (R.R. Item 8a.) The management directive demonstrates that SERS anticipates situations where terminated, but later reinstated, employees elect to withdraw funds from their retirement accounts, and that such a policy was necessary for dealing with those situations.

Further, SERS provided Ms. Holmes with an "Invoice of *Mandatory* Amount Due" regarding the balance owed on Ms. Holmes' overpaid annuity due to her arbitration award, and another "Invoice of Amount Due" regarding the purchase of Ms. Holmes' service, which totaled approximately $38,488.65, at the time of her termination, plus 4% compounded interest accruing annually. (R.R. Item 8a (emphasis added).) As of the date of the hearing, Ms. Holmes owed approximately $42,569.52 to make her retirement account whole. (Hr'g Tr. at 22.) In requesting reimbursement of the SERS monies, Ms. Holmes is essentially

14

asking to benefit from that money twice: first, when she withdrew the money from her account and used it to support herself and pay back debts; and second, when the money is repaid into her retirement account to be withdrawn, again, later when she actually retires. We find that Ms. Holmes already received the benefit of the money from her SERS account because she was able to support herself and her family, and pay back debts, during the time in which she was suspended. Ms. Holmes even admitted that she benefited from the money she withdrew, in that it reduced the amount of her debt overall. (Hr'g Tr. at 42.)

The Commission argues that the Appointing Authority "has not historically awarded such monies," and that "to restore the funds 'would serve [as] nothing more than [an unwarranted] and great windfall to [Ms. Holmes].'" (Commission Decision at 12.) We are inclined to agree with the Commission on that point. Ms. Holmes has not demonstrated that she is entitled to reimbursement of the SERS monies she voluntarily chose to withdraw from her retirement account after her removal and not repay. The Commission did not err in denying Ms. Holmes reimbursement of these monies. Because the Commission did not err in its application of the law, the Commission did not abuse its discretion in denying reconsideration.

For the foregoing reasons, the Commission's Order is affirmed.

_____
**RENÉE COHN JUBELIRER, Judge**

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Markeeta Holmes, :
:
Petitioner :
:
v. : No. 694 C.D. 2015
:
State Civil Service Commission :
(Department of Human Services), :
:
Respondent :

# **O R D E R**

**NOW**, April 18, 2016, the Order of the State Civil Service Commission, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER, Judge**